# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Office of the District Attorney of
Philadelphia,
               Appellant

        v.

Ryan Bagwell

Office of the District Attorney of
Philadelphia,
               Appellant

        v.

Ryan Bagwell

City of Philadelphia,
               Appellant

        v.

Ryan Bagwell

City of Philadelphia

        v.

Ryan Bagwell

Appeal of: Office of District Attorney
of Philadelphia

: 
: 
: 
: 
: CASES CONSOLIDATED
: Nos. 2627, 2641 C.D. 2015
: Submitted: October 7, 2016
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
: CASES CONSOLIDATED
: Nos. 435, 473 C.D. 2016
: Submitted: October 7, 2016
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  February 16, 2017**

On February 17, 2016 Judge Linda Carpenter of the Court of Common Pleas of Philadelphia County (Trial Court) issued an opinion and order affirming the March 23, 2015 final determination of the Office of Open Records (OOR) that ordered the production of certain documents responsive to a request made by Ryan Bagwell (Requester) on September 29, 2014 (Request I) pursuant to the Right to Know Law[1] (RTKL). The City of Philadelphia (City) and the Office of the District Attorney of Philadelphia (District Attorney) appealed the Trial Court's order to this Court and the appeals, docketed at Nos. 435 and 473 C.D. 2016, were consolidated for review.

Prior to the February 17, 2016 order, Judge Carpenter of the Trial Court also issued orders on October 23, 2015 and on December 2, 2015 affirming a separate but related request for records made by Requester on October 2, 2014 (Request II), and issued a civil penalty pursuant to Section 1305(a) of the RTKL. The District Attorney appealed the October 23, 2015 and December 2, 2015 orders issued by the Trial Court to this Court and the appeals, docketed at Nos. 2627 and 2641 C.D. 2015, have been consolidated for review.

On October 7, 2016, the two sets of consolidated appeals from the Trial Court were submitted on briefs[2] for disposition by this Court and, due to the interrelated nature of the consolidated appeals, the following opinion will address this Court's reasons for affirming the Trial Court's orders in the two consolidated appeals.[3]

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] By order of this Court, Requester was precluded from filing a brief in these matters for failure to comply with this Court's scheduling orders.

[3] Under the RTKL, when the request for records was directed to a local agency, the court of common pleas is the "Chapter 13" court and reviews the determination issued by OOR with a *de*

2

# I. Background

## *Request I*

On September 29, 2014, Requester submitted the following enumerated request for records to the City pursuant to the RTKL:

1. a document or documents that identify all backups of the [City's] Lotus Notes e-mail system that were created between January 1, 2013, and August 31, 2013 and currently exist;

2. all policies and procedures in effect from January 1, 2013 through August 31, 2013 that pertain to the backup and archiving of the [City's] Lotus Notes e-mail system;

3. all policies pertaining to [City] Internet and e-mail use that were in effect from January 1, 2013 through August 31, 2013;

4. all letters, e-mails and memos sent to the [District Attorney] in July and August 2013 regarding the [District Attorney's] conversion from using the Lotus Notes e-mail system to the Microsoft Exchange e-mail system;

5. all records of network traffic emanating from the workstation of [District Attorney] employee Frank Fina between July 1, 2013 and September 31, 2013, including, but not limited to, website browsing history;

**6. records of inquiries from the [District Attorney] about searching the [City's] Lotus Notes and**

---

*novo* standard and a plenary scope; the court of common pleas may substitute its own findings of fact for that of the agency or rely upon the record created below. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013) (*Bowling II*). When the court of common pleas is the "Chapter 13" or reviewing court, our appellate review is limited to whether the trial court has committed an error of law and whether the findings of fact are supported by substantial evidence. *Township of Worcester v. Office of Open Records*, 129 A.3d 44, 49 n.2 (Pa. Cmwlth. 2016).

**Exchange e-mail systems between July 1, 2013 and September 31, 2014;**

7. all records of technical support inquiries by [District Attorney] employee Frank Fina from January 1, 2013 through September 31, 2013, and;

8. all [City] record retention policies in effect from January 1, 2013, through September 31, 2014.

(Nos. 435/473 C.D. 2016: Certified Record (C.R.) Records Request I, Reproduced Record (R.R.) at 14a (emphasis added).) Following an extension, the City denied the request as a whole as "an improper attempt to circumvent the Court's jurisdiction over the discovery process," and as relating to a judicial order, and denied Item Nos. 1, 2, a portion of 5, 6 and 7 on the basis that no records existed which were within the City's possession, custody or control, and further denied Item No. 5 on the basis that the use of the term "network traffic" was insufficiently specific. (Nos. 435/473 C.D. 2016: C.R. November 19, 2014 City Response to Records Request, R.R. at 16a-23a.) On November 20, 2014, Requester appealed the City's denial to OOR.[4]

On December 10, 2014, the City alerted Requester and OOR that records responsive to Item Nos. 1, 2 and portions of 5 and 7 do not exist, but that records responsive to Item No. 6 had been located; however, the City stated that the records responsive to Item No. 6 were protected from disclosure by the attorney work product doctrine and attorney-client privilege, as well as the internal predecisional deliberations exception and due to the fact that the records were created in connection with litigation. (Nos. 435/473 C.D. 2016: C.R. December

---

[4] The District Attorney was permitted to participate along with the City in the proceedings before OOR. Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c); *State Employees' Retirement System v. Pennsylvania for Union Reform*, 113 A.3d 9, 15, 19-21 (Pa. Cmwlth. 2015).

4

10, 2014 City Letter Brief to OOR.)  On December 11, 2014, OOR required the City to submit a privilege log no later than December 16, 2014 identifying the records responsive to Item No. 6 and the reason for withholding each record.  (Nos. 435/473 C.D. 2016: C.R. OOR Email Request for Privilege Log and City Response.)  On December 19, 2014, the City asserted in an email response to OOR that OOR was without authority to require the City to submit a privilege log, however, the City produced a privilege log nonetheless; the City also withdrew its assertion of attorney-client privilege.[5]  (*Id*.; C.R. Privilege Log.)  On January 5, 2015, OOR required the City to produce the records responsive to Item No. 6 for *in camera* inspection by the close of business on January 16, 2015.  (Nos. 435/473 C.D. 2016: C.R. OOR January 5, 2015 order.)

On March 23, 2015, OOR issued a decision granting Requester's appeal in part and denying it in part.  (Nos. 435/473 C.D. 2016: C.R. OOR Decision, R.R. at 24a-37a.)  In its decision, OOR rejected the City's assertion that litigation between Requester and the District Attorney served as a bar to production of documents responsive to Requester's RTKL request and that a judicial order denying access to documents sought through the discovery process

---

[5] *Office of Open Records v. Center Township*, 95 A.3d 354 (Pa. Cmwlth. 2014) (*en banc*) was decided **June 24, 2014**.  In *Center Township*, we held that OOR has subject matter jurisdiction to determine whether a record is exempt as privileged and that OOR has authority to request production of a privilege log and to conduct *in camera* review of documents where a privilege has been asserted.  *See also Township of Worcester v. Office of Open Records*, 129 A.3d 44 (Pa. Cmwlth. 2016) (accord); *Bagwell v. Department of Education*, 103 A.3d 409 (Pa. Cmwlth. 2014) (*en banc*) (accord); *Heavens v. Department of Environmental Protection*, 65 A.3d 1069 (Pa. Cmwlth. 2013) (accord).  Moreover, this Court reaffirmed in *Center Township* that our decision in *City of Pittsburgh v. Silver*, 50 A.3d 296 (Pa. Cmwlth. 2012), had no bearing upon whether OOR had subject matter jurisdiction to determine whether a record is exempt as privileged and that *Silver's* holding was strictly limited to the precept that OOR cannot order the disclosure of records that fall within the ethics-based rule of confidentiality in Pennsylvania Rule of Professional Conduct 1.6.

was determinative of whether the same documents were publicly accessible under the RTKL. (*Id*. at 6-8, R.R. at 29a-31a.) OOR also concluded that Item No. 5 in Requester's request for responsive documents was sufficiently specific under the RTKL. (*Id*. at 9-11, R.R. at 32a-34a.) Furthermore, OOR concluded after *in camera* review of the records responsive to Item No. 6 that six of the documents were subject to redaction under the work product doctrine but that the remainder must be disclosed. (*Id*. at 11-14, R.R. at 34a-37a.) Finally, OOR concluded that the City had met its burden of demonstrating that records responsive to Item Nos. 1, 2 and portion of 5 and 7 do not exist. (*Id*. at 8, R.R. at 31a.) The City and the District Attorney appealed OOR's decision to the Trial Court.[6]

The Trial Court affirmed OOR's decision in a February 17, 2016 decision and order holding that OOR did not err in concluding that Item Nos. 5 and 6 were not protected from disclosure, and ordering disclosure of all documents responsive to Items No. 5 and 6 of Requester's September 29, 2014 RTKL request to the City.[7] (Nos. 435/473 C.D. 2016: Trial Court Decision and Order.) The City and the District Attorney appealed the Trial Court's order to this Court and have limited the issue for our review to whether emails responsive to Item No. 6 of Requester's September 29, 2014 RTKL request are attorney information related to pending or impending litigation. The Trial Court issued a 1925(a) opinion on March 31, 2016.

### *Request II*

---

[6] On appeal to the Trial Court, the District Attorney filed a motion to intervene and the District Attorney's motion was granted by August 10, 2015 order of the Trial Court.

[7] The parties reached an agreement regarding the remainder of the documents responsive to the items requested and, accordingly, the Trial Court limited its holding to Items Nos. 5 and 6.

On October 2, 2014, Requester submitted the following enumerated request for records to the District Attorney pursuant to the RTKL:

1. All record retention policies followed by the [District Attorney] between January 1, 2013 and October 1, 2014;

2. All policies and procedures pertaining to the backup and archiving of [District Attorney] e-mail servers that were in effect between July 1, 2013 and October 1, 2014;

3. All policies governing employee use of [District Attorney] computers and e-mail systems between July 1, 2013 and October 1, 2014;

4. All e-mails BJ Graham Rubin and Frank Fina exchanged with each other between July 1, 2013 and November 30, 2013 pertaining to my RTKL request that was received by the [District Attorney's] Open Records Officer on July 22, 2013;

5. All e-mails BJ Graham Rubin and Seth Williams exchanged with each other between July 1, 2013 and November 30, 2013 pertaining to my RTKL request that was received by the [District Attorney's] Open Records Officer on July 22, 2013;

6. All e-mails sent between Seth Williams and Frank Fina between July 1, 2013 and October 1, 2014 regarding Mr. Fina's correspondence with Judge Barry Feudale;

**7. All e-mails, memos and letters exchanged by the [District Attorney] and the [City's] Office of Innovation and Technology between July 1, 2013 and October 1, 2014 pertaining to searching for e-mails on the [City's] e-mail servers and/or backup copies of the [City's] e-mail servers;**

**8. All e-mails, letters and memos pertaining to the [District Attorney's] transition from Lotus Notes e-**

7

**mail platform to the Microsoft Exchange e-mail platform between January 1, 2013 and December 31, 2013;**

9. All e-mails sent or received by Seth Williams between January 1, 2014 and October 1, 2014 pertaining to RTKL legislation in the Pennsylvania General Assembly, including but not limited to, Senate Bill 444.

(Nos. 2627/2641 C.D. 2015: C.R. Records Request II (emphasis added).) Following an extension, on November 10, 2014, the District Attorney denied the request with respect to Item Nos. 1-3 on the grounds that the request related to litigation involving the District Attorney and Requester, and specifically to items sought in a motion to compel filed by Requester that was denied by judicial order. (Nos. 2627/2641 C.D. 2015: C.R. November 10, 2014 District Attorney Response to Records Request, R.R. at 152a-154a.) The District Attorney further denied the request with respect to Item Nos. 4, 5, 6 and 9 on the basis that no records existed which were within the District Attorney's possession, custody or control. (*Id*.) Finally, the District Attorney denied the request with respect to Item Nos. 7 and 8 on the basis that the request was insufficiently specific and overly broad. (*Id*.) On November 12, 2014, Requester appealed to OOR.

On November 21, 2014, the District Attorney alerted OOR that it was producing records responsive to Item No. 3 of Requester's request, but that it maintained that Item Nos. 4, 5, 6 and 9 do not exist within the District Attorney's possession, custody or control, Item Nos. 7 and 8 were insufficiently specific to respond to, and maintained that, despite its production, Item No. 3 was not subject to access pursuant to a judicial order in ongoing litigation. (Nos. 2627/2641 C.D. 2015: C.R. November 21, 2014, District Attorney Brief to OOR.)

8

On January 12, 2015, OOR granted Requester's appeal in part, and denied it in part.[8] (Nos. 2627/2641 C.D. 2015: C.R. OOR Decision at 1, R.R. at 224a.) OOR concluded that the District Attorney had met its burden to demonstrate that records related to Item Nos. 4, 5 and 9 do not exist in the District Attorney's possession, custody or control. (*Id.* at 6, R.R. at 229a.) OOR further concluded that, with respect to Item No. 6, the District Attorney had construed the request too narrowly and failed to meet its evidentiary burden of proof to demonstrate that the records sought did not exist. (*Id.* at 6-7, R.R. at 229a-230a.) Next, OOR concluded that records responsive to Item Nos. 1 and 2 were not barred from disclosure by litigation and, because no privileges or exemptions were asserted, must be disclosed. (*Id.* at 7-10, R.R. at 230a-233a.) Finally, OOR concluded that Item Nos. 7 and 8 were sufficiently specific and that the District Attorney must produce responsive records. (*Id.* at 10-12, R.R. at 233a-235a.) The District Attorney appealed OOR's decision to the Trial Court. On September 9, 2015, one day prior to argument before the Trial Court, the District Attorney informed Requester that it was turning over records responsive to Item Nos. 1 and 2 of Request II.[9]

On October 23, 2015 the Trial Court issued an opinion and order affirming OOR's decision and holding that OOR did not err in concluding that the

---

[8] OOR also dismissed as moot Requester's request for documents related to Item No. 3, as the District Attorney produced the responsive documents. (Nos. 2627/2641 C.D. 2015: OOR Decision at 1, 12-13, R.R. at 224a, 235a-236a.)

[9] By September 9, 2015 letter disclosing records responsive to Items No. 1 and 2 of Request II, the District Attorney informed Requester that, *inter alia*, "[w]hile the [District Attorney] continues to believe that you improperly utilized the RTKL to circumvent an adverse discovery order in a separate civil action, it has decided, after consultation with the City, to present this challenge in an alternative context. This decision should not be interpreted as having any bearing on the merits of the [District Attorney's] arguments." (Nos. 2627/2641 C.D. 2015: September 9, 2015, District Attorney Letter to Requester, R.R. at 282a.)

intended use of responsive records, even where those records had been the subject of discovery disputes in litigation between the same parties, had no bearing on whether the documents were publicly accessible records subject to disclosure under the RTKL. (Nos. 2627/2641 C.D. 2015: Trial Court Op. at 3-5.) Next, the Trial Court held that OOR did not err in concluding that Item Nos. 7 and 8 were sufficiently specific and that the District Attorney was obligated to disclose responsive records. (*Id*. at 6-7.) Accordingly, the Trial Court ordered the District Attorney to "promptly disclose all documents responsive to Requests 1, 2, 7 and 8 as ordered for disclosure by the OOR's decision of January 12, 2015," and issued a Rule to Show Cause why attorney's fees, costs and/or penalties should not be awarded pursuant to Sections 1304 and 1305 of the RTKL, 65 P.S. §§ 67.1304-1305.

On December 2, 2015, following a hearing, the Trial Court issued an order finding that "the [District Attorney's] denial of [Requester's Request II Item Nos.] 1 and 2 was in bad faith," and imposed a civil penalty of five hundred dollars ($500). (Nos. 2627/2641 C.D. 2015: Supplemental Record (S.R.) December 1, 2015, Hearing Transcript (H.T.).) The District Attorney appealed to this Court for review of the Trial Court's October 23 and December 2, 2015 orders and, on March 31, 2016, the Trial Court issued an opinion in support of affirmance. We would be remiss if we did not note that in its 1925(a) opinion, the Trial Court specifically noted the District Attorney's questionable representation of precedent before OOR and the Trial Court. (Nos. 2627/2641 C.D. 2015: 1925(a) Op. at 4-5.) In addition, the Trial Court reasoned that the imposition of a $500 civil penalty pursuant to Section 1305(a) of the RTKL was warranted because the District Attorney's initial response to Requester and continued refusal to disclose Item Nos. 1, 2, 7 and 8 following OOR's final determination, stood in clear

10

contravention of the precedent of the courts of this Commonwealth and, therefore, constituted bad faith. (*Id*. at 8-10.)

Before this Court, the District Attorney argues that the Trial Court erred in imposing a penalty under Section 1305(a) of the RTKL and that Item Nos. 7 and 8 of Requester's Request II are insufficiently specific, as the items seek "years' worth of technology-related correspondence between unidentified employees of the [District Attorney] and the [City]." (Nos. 2627/2641 C.D. 2015: District Attorney Brief at 19.)

### *Mandamus Action*

On July 22, 2013, prior to the matters currently before this Court, Requester submitted a RTKL request to the District Attorney, seeking:

> [A]ll e-mails that were sent or received by Frank G. Fina between December 1, 2012 and July 15, 2013, and were sent to or from the following individuals:
>
> 1. Louis Freeh
> 2. Tom Cloud
> 3. Greg Paw
> 4. Barry Feudale
> 5. Randy Feathers

(OOR Final Determination at 1, Docket No: 2013-1586.) On August 23, 2013, the District Attorney denied the request on the basis that it did not seek "records" as defined by Section 102 of the RTKL, 65 P.S. § 67.102. (*Id*. at 2.) Requester appealed the denial to OOR. (*Id*.) Before OOR, the District Attorney submitted a position statement reasoning that Requester's RTKL request did not implicate public records of the District Attorney as the request related to the investigation of Jerry Sandusky conducted by the Office of the Attorney General. (*Id*. at 2-3)

11

Requester submitted a response, arguing that the burden was on the District Attorney to prove that records requested pursuant to the RTKL were not public and that the District Attorney erred in modifying the request by adding a subject matter, specifically investigations related to Sandusky. (*Id*. at 4.) The District Attorney submitted an additional response, arguing that Requester's RTKL request had been insufficiently specific and, therefore, it had been necessary to interpret the request as relating to the Sandusky investigation conducted by the Office of the Attorney General. (*Id*. at 4.)

Following further development of the record, OOR issued a final determination on November 4, 2013 concluding that Requester's July 22, 2013 request had been sufficiently specific and that the request sought "records" within the meaning of the RTKL. (*Id*. at 6-10.) Accordingly, OOR granted Requester's July 22, 2013 RTKL request and required the District Attorney to provide all responsive records within thirty days. (*Id*. at 10.)

On December 30, 2013, Requester filed a complaint in mandamus in the Trial Court seeking to compel the District Attorney to comply with OOR's November 4, 2013 order to provide all records responsive to Requester's July 22, 2013 RTKL request. *See Ryan Bagwell v. R. Seth Williams, In his Official Capacity as District Attorney and Philadelphia District Attorney's Office*, (Pa. Cmm. Pl. No. 3553, December Term, Case ID: 131203553) (*Bagwell v. Williams*) (complaint). During the course of Requester's mandamus action, Requester filed a motion to compel the District Attorney to provide answers to interrogatories, which included, *inter alia*, the following:

> 1. Provide any or all policies of the [District Attorney], or any office or agency whose policies to which the [District Attorney] must adhere, related to archiving,

preserving, backing up or destruction of e-mail communications or e-mail data files or their contents on the District Attorney's office e-mail system.

2. As to data backups performed on all computer systems currently in use or since December 1, 2012 identifying the following:

a. All procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, the type of backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT).

b. The individual(s) who conducted the backup and the individual who supervised the process.

3. Identify whether Frank Fina's emails were backed up since December 1, 2012 and describe the nature of the backup.

*See Bagwell v. Williams* (Motion to Compel Answers to Interrogatories); (*see also* Nos. 2627/2641 C.D. 2015: C.R. November 21, 2014 Requester Letter Brief to OOR, Exhibit A, and November 21, 2014 District Attorney Brief to OOR, Exhibits B & D.)

On September 26, 2014, Judge Idee Fox of the Trial Court issued the following order denying Requester's motion to compel:

AND Now, this 26 day of September, 2014, upon Plaintiff's Motion to Compel Answers to Interrogatories, Defendant's response thereto, oral arguments and supplemental filings received from Defendant, it is

13

hereby ORDERED and DECREED that Plaintiff's Motion is DENIED.

*Bagwell v. Williams* (Order filed September 24, 2016); (*see also* Nos. 2627/2641 C.D. 2015: C.R. November 21, 2014 Requester Letter Brief to OOR, Exhibit B, and November 21, 2014 District Attorney Brief to OOR, Exhibit E.)

The first of Requester's RTKL requests at issue here was filed three days after the Trial Court issued its order in Requester's mandamus action denying his motion to compel. Although the order speaks for itself, at the December 1, 2015 hearing before the Trial Court on penalties pursuant to Section 1304 and 1305 of the RTKL, the District Attorney stated: "within the context of the discovery litigation, [the Trial Court] determined that those documents weren't subject to discovery because they were **irrelevant**." (Nos. 2627/2641 C.D. 2015: S.R. December 1, 2015 H.T. at 30 (emphasis added); November 21, 2014 District Attorney Brief to OOR, Exhibit C); *see also Bagwell v. William* (District Attorney Response to Requester's Motion to Compel).

In the proceedings before OOR and the Trial Court giving rise to the appeals now before this Court, both the District Attorney and Requester submitted filings from the mandamus action. In pursuing the argument that the records Requester sought were exempt from public access because the records related to a judicial order, attorney-work product and ongoing litigation, it is this mandamus action and the September 24, 2016 order issued by the Trial Court denying Requester's motion to compel interrogatories that the City and the District Attorney are referring.

## II. Discussion

14

In 2008, the General Assembly enacted the RTKL, replacing the Right to Know Act[10] and providing for significantly broadened access to public records. *Bowling v. Office of Open Records*, 75 A.3d 453, 456 (Pa. 2013) (*Bowling II*). Under the Right to Know Act, the burden of establishing that the records requested bore the characteristics of public records lay with the requester. *LaValle v. Office of General Counsel*, 769 A.2d 449, 458 (Pa. 2001). By contrast, under the RTKL, agency records are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged. *Bowling II*, 75 A.3d at 456. The RTKL requires a local agency to disclose public records[11] and "**may not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law**." Section 302 of the RTKL, 65 P.S. § 67.302 (emphasis added).

Under Section 305 of the RTKL, a record in possession of a local agency "**shall be presumed to be a public record**," however, the presumption shall not apply if "(1) the record is exempt under section 708 of the RTKL; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under

---

[10] Act of June 21, 1957, P.L. 390, *as amended*, Act of June 29, 2002, P.L. 663, *repealed by*, Act of February 14, 2008, P.L. 6, *formerly*, 65 P.S. §§ 66.1–66.9.

[11] A record is defined under the RTKL as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

Section 102 of the RTKL, 65 P.S. § 67.102.

15

any other Federal or State law or regulation or judicial order or decree." Section 305 of the RTKL, 65 P.S. § 67.305 (emphasis added). Under the RTKL, a "privilege" is defined as including the attorney-work product doctrine. Section 102, 65 P.S. § 67.102.

The "**burden of proving that a record** of a…local agency **is exempt from public access shall be on the…local agency** receiving a request by a preponderance of the evidence." Section 708 of the RTKL, 65 P.S. § 67.708(a)(1) (emphasis added). A preponderance of the evidence is such evidence as would lead a fact-finder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact. *Pennsylvania Office of Attorney General v. Bumsted*, 134 A.3d 1204, 1210 n.12 (Pa. Cmwlth. 2016); *Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 438-439 (Pa. Cmwlth. 2011). A local agency may provide affidavits to detail the search its RTKL officer conducted for documents responsive to a RTKL request and the justification, if applicable, for any exemption from public disclosure or privilege relied upon for denying a requester access to responsive documents *Office of Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013). Relevant and credible testimonial affidavits may provide sufficient evidence in support of a claimed exemption; however, conclusory affidavits, standing alone, will not satisfy the burden of proof an agency must sustain to show that a requester may be denied access to records under the RTKL. *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014); *Heavens v. Pennsylvania Department of Environmental Protection*, 65 A.3d 1069, 1074 (Pa. Cmwlth. 2013). Moreover, the RTKL is remedial in nature and "is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for

16

their actions." *Pennsylvania State Police v. McGill*, 83 A.3d 476, 479 (Pa. Cmwlth. 2014). Therefore, in determining whether a record is exempt from disclosure under the RTKL, exemptions from disclosure must be narrowly construed so as not to frustrate the remedial purpose of the RTKL. *Scolforo*, 65 A.3d at 1100; *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010) (*en banc*) (*Bowling I*), *affirmed*, *Bowling II*.

Section 901 of the RTKL establishes the general rule for a local agency's response to a request made pursuant to the RTKL, mandating that "[u]pon receipt of a written request for access to a record, **an agency shall make a *good faith* effort to determine if the record requested is a public record**, legislative record or financial record and **whether the agency has possession, custody or control of the identified record**, and **to respond as promptly** as possible under the circumstances existing at the time of the request." 65 P.S. § 67.901 (emphasis added). Section 901 of the RTKL also provides that a local agency shall respond to a records request within five (5) business days; however, Section 902 permits the local agency's open-records officer to seek an extension of the reply period if upon receipt of the request the local agency's open-records officer determines that one of seven enumerated exceptions applies and prevents the local agency from responding to the request within the time allowed. 65 P.S. §§ 67.901-67.902.

If a local agency responds to a requester's RTKL request with a denial, "whether in whole or in part, the denial shall be issued in writing and shall include," *inter alia*, "(1) a description of the record requested" and "(2) the specific reasons for denial, including a citation of supporting legal authority."[12] Section

---

[12] In the City's response to Request I, it provided as "Generally Applicable Grounds for Denial," the following:

17

903 of the RTKL, 65 P.S. § 67.903. The local agency's denial must also advise the

> Your request in its entirety is denied as an improper attempt to circumvent the Court['s] jurisdiction over the discovery process. The [RTKL] provides that if its provisions "regarding access to records conflict with any other federal or state law, the provisions of this act shall not apply." [Section 3101.1 of the RTKL,] 65 P.S. § 67.3101.1. The Commonwealth Court has recognized that the use of the [RTKL] to circumvent the civil discovery process would be improper when used to avoid the notification requirements of the Pennsylvania Rules of Civil Procedure. *See [Department] of Health v. Office of Open Records*, 4 A.3d 803, 812 n. 11 [(Pa. Cmwlth. 2010)] (interpreting the [RTKL] to avoid exempt [sic] the release of requested records, but noting that if the Court were to determine otherwise, "we would, as the Department and Amici Curiae point out, be paving the way for circumvention of the civil discovery process."). For example, Pennsylvania Rules of Civil Procedure [Nos.] 4009.21 and 4009.22 provide the procedure for serving a subpoena upon third parties and the rules expressly require notice and allow for the opportunity for objection before the subpoena is served. Pa.R.C.P. [No.] 4009.21.
>
> Moreover, in the alternative, your request is denied as improperly attempting to circumvent the order by Judge Idee Fox, issued September 26, 2014, denying your Motion to Compel Answers to Interrogatories in *Bagwell v. R. Seth Williams*, Dec. Term 2013 No. 03553 (Order, Comm. Pl. Sept. 26, 2014).

(Nos. 435/473 C.D. 2016: C.R. November 19, 2014 City Response to Records Request, R.R. at 17a.) In response to Request II, the District Attorney stated the following:

> At the outset, your first three requests are, as you are aware, the subject of independent litigation regarding a motion you served on the District Attorney to "Compel Answers to Interrogatories," which the [Trial Court] denied on September 26, 2014. A copy of that order is attached as Appendix A, for your convenience. The RTKL was not intended to provide for, [sic] disclosure of materials based on a request that is a plain attempt to circumvent a judge's discovery order.

(Nos. 2627/2641 C.D. 2015: C.R. November 10, 2014 District Attorney Response to Records Request, R.R. at 153a.)

18

requester of the procedure by which the requester may appeal the denial to OOR. Section 903(5) of the RTKL, 65 P.S. § 67.903(5).

If a requester appeals a denial issued by a local agency to OOR, the burden remains on the local agency to demonstrate by a preponderance of evidence that the request was denied because the records sought were not subject to disclosure under Section 305 of the RTKL. *Bowling II*, 75 A.3d at 467; *Ali v. Philadelphia City Planning Commission*, 125 A.3d 92, 100 (Pa. Cmwlth. 2015).

**Request I Item No. 6**

**Pending Litigation**

The City and the District Attorney have filed a joint brief in support of their argument that the Trial Court erred in affirming OOR's determination that emails responsive to Item No. 6 of Request I—records of inquiries from the District Attorney about searching the City's Lotus Notes and Exchange e-mail systems between July 1, 2013 and September 31, 2014—were subject to disclosure under the RTKL, although six of the responsive documents were subject to redaction. In support of their position, the City and the District Attorney rely on *Schenck v. Township of Center, Butler County*, 893 A.2d 849 (Pa. Cmwlth. 2006).

In their brief, the City and the District Attorney argue that this Court's decision in *Schenck*, which was decided under the now repealed Right to Know Act, holds that "*all* information from government attorneys '*relating to pending or impending litigation* is inaccessible' through the [Right to Know Act]." (City and District Attorney Joint Brief at 13 (emphasis supplied).) However, in *Schenck*, this Court very clearly stated: "we hold that the description of litigation-related services in a solicitor's invoice is not accessible under either the [Right to Know Act] or the

19

Sunshine Act[13] in the absence of consent from the client municipality." *Id*. at 855. Our holding was thus quite distinguishable from the one the City and the District Attorney represent in their brief. Moreover, our limited holding in *Schenck* was further tempered by our Supreme Court's decision in *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 373 (Pa. 2013) (*Levy II*), where the Court, under the RTKL, disclaimed any *per se* application of the attorney-client privilege, holding instead that "the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege." *Id*. at 373; *see also Schenck v. Township of Center, Butler County,* 975 A.2d 591, 599 (Pa. 2009) (Saylor, J. dissenting from dismissal of appeal as improvidently granted, joined by Castille, C.J.); *Office of Open Records v. Center Township*, 95 A.3d 354, 371 (Pa. Cmwlth. 2014) (*en banc*) (holding that OOR properly ordered a local agency to produce documents for *in camera* review where the local agency based its refusal to disclose records subject to the RTKL on bald allegations of privilege).

The reasoning underpinning our holding in *Schenck*, from which the City and the District Attorney selected their quotation, relies upon the fact that the Right to Know Act, like the RTKL, was part of a series of legislative enactments designed to provide a comprehensive system governing access to meetings and hearings of municipal governing bodies. Therefore, in *Schenck* we construed the Right to Know Act along with the Sunshine Act and reasoned that:

> A provision in the Sunshine Act permits an agency to
> conduct some of its business in executive session, outside

---

[13] 65 Pa.C.S. §§ 701–716. The former Open Meeting Law, Act of July 19, 1974, P.L. 486, *as amended, formerly* 65 P.S. §§ 261–269, was repealed by the former Sunshine Act, Act of July 3, 1986, P.L. 388, *as amended, formerly* 65 P.S. §§ 271–286, which in turn was repealed and reenacted in codified form by the Act of October 15, 1998, P.L. 729.

the view of the public. Thus, 65 Pa.C.S. § 708(a)(4) permits an executive session so the agency may "consult with its attorney or other professional advisor regarding information or strategy in connection with litigation or issues on which identifiable complaints are expected to be filed." This provision acknowledges that the public would be better served if the governing body had private discussions on matters in litigation prior to public resolution. *Reading Eagle Co. v. Council of City of Reading*, [627 A.2d 305 (Pa. Cmwlth. 1993)]. If knowledge of litigation information became public, it would impair a municipality's ability to defend those matters. *Id*.

This statutory exception from the disclosure provisions of the Sunshine Act broadly relates to information in connection with pending or impending litigation. It is not limited to attorney work product.

Construing the [Right to Know Act] and the Sunshine Act together as one statute and as part of a uniform system of jurisprudence, this exception from disclosure applies here. **Indeed, it would be absurd if litigation information from the solicitor was protected the evening of a municipal meeting, but it could be accessed the next morning through a description of litigation-related legal services in an invoice. We presume such an unreasonable result is not intended. 1 Pa.C.S. § 1922(1). Under this construction, it is not necessary for a trial court to read every invoice and evaluate every described service for the presence of attorney work product. Instead, all information from the solicitor relating to pending or impending litigation is inaccessible.**

*Schenck*, 893 A.2d at 854 (emphasis added). In the instant matter, Requester is not seeking disclosure of information via the Right to Know Act that is specifically protected from disclosure by the Sunshine Act. Rather, the City and the District

21

Attorney are seeking to prevent disclosure of information subject to disclosure under the RTKL on the basis that disclosure of the information was not compelled in an unrelated civil matter and, alternatively, is protected by the work-product doctrine. Therefore, even if *Schenck* provided firm ground for the proposition that "all information from **the solicitor** relating to pending or impending litigation is inaccessible," *Schenck* would have no bearing on the matter before us. *Id.* (emphasis added).

### Attorney-Work Product Privilege

A mere assertion that responsive documents are protected from disclosure under the RTKL by the attorney-work product privilege is insufficient to deny disclosure. Instead, the party seeking to deny disclosure by asserting the attorney-work product privilege is required to demonstrate that the documents reveal "the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa. R.C.P. No. 4003.3; Section 102 of the RTKL, 65 P.S. § 67.102 (defining "privilege" to include the attorney-work product doctrine). In addition, the privilege may be asserted by demonstrating that "[w]ith respect to the representative of a party other than the party's attorney," the responsive records include "disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics." Pa. R.C.P. No. 4003.3. The attorney-work product privilege has been interpreted in the courts of this Commonwealth to offer broad protection to the mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation; however, as reflected in the text of the rule, the privilege is more narrowly applied to representatives of a party other than the

22

party's attorney. *Levy II*, 94 A.3d at 443-444; *Heavens*, 65 A.3d at 1077 (*citing Gillard v. AIG Insurance Co.*, 15 A.3d 44, 59 n.16 (Pa. 2011)); *see also* Pa. R.C.P. No. 4003.3, cmt.[14]

In asserting Item No. 6 of Request I did not implicate public records because the responsive items consisted of information protected by the attorney-work product privilege, the City and the District Attorney submitted an affidavit sworn under penalty of perjury by BJ Graham-Rubin, District Attorney Chief of Civil Litigation and RTKL Open-Records Officer. (Nos. 435/473 C.D. 2016: C.R. December 10, 2014 City Letter Brief to OOR, Exhibit C.[15]) Following *in camera*

---

[14] The explanatory comment to Rule 4003.3 describes the "broad category" of work product materials but also limits the work product exception as follows:

> The essential purpose of the Rule is to keep the files of counsel free from examination by the opponent, insofar as they do not include written statements of witnesses, documents or property which belong to the client or third parties, or other matter which is not encompassed in the broad category of the "work product" of the lawyer. Documents, otherwise subject to discovery, cannot be immunized by depositing them in the lawyer's file. The Rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more.

Pa.R.C.P. No. 4003.3, cmt.

[15] The affidavit, in addition to being signed and dated, stated:

> I, BJ Graham-Rubin, am the Chief of the Civil Litigation Unit for the [District Attorney], and am authorized to execute this affidavit. I state the following to the best of my knowledge, information and belief under penalty of perjury pursuant to 18 Pa. C.S. § 4904 relating to unsworn falsification of authorities:
>
> 1. I am familiar with the request at issue in the above captioned appeal.
>
> 2. I have reviewed records responsive to the portion of Mr. Bagwell's request seeking "records of inquiries from the [District

23

review of the records responsive to Item No. 6 of Request I, OOR disagreed, finding that the burden to establish that the privilege shielding attorney-work product from disclosure under the RTKL applied to the records responsive to Item No. 6 of Request I was met only in regards to portions of six emails. (Nos. 435/473 C.D. 2016: C.R. OOR Decision at 13, R.R. at 26a.) OOR found:

> Many of the e-mails withheld in this matter do not disclose such mental processes, i.e., the attorney's mental impressions, conclusions, opinions, memoranda, notes or

Attorney] about searching the [City's] Lotus Notes and Exchange e-mail systems between July 1, 2013 and September 31, 2014 (hereinafter, the "Responsive Records").

3. All Responsive Records are messages from [District Attorney] attorneys pertaining to specific discovery requests made in litigation that was active at the time the messages were sent, or to [RTKL] requests that were pending at the time the requests were made. The messages ask other City employees to collect and/or hold certain email messages.

4. The Responsive Records, specifically the Responsive Records' instructions from [District Attorney] attorneys to other City employees regarding certain email messages, wholly constitute [District Attorney] attorneys' work-product, because the messages constitute and/or reveal the mental impressions and conclusions of [District Attorney] Attorneys.

5. The Responsive Records are messages sent from [District Attorney] employees regarding litigation that was active and/or pending at the time the messages were sent. These messages were internal to the [City], i.e. they were sent from [District Attorney] attorneys to other City employees.

6. The Responsive Records are email messages from [District Attorney] attorneys to the City's [Office of Information Technology] Department which pertain to [RTKL] requests and/or litigation pending at the time the requests were made, and contain predecisional deliberations of the [District Attorney] employees regarding litigation of those cases.

24

> summaries, legal research or legal theories. In fact, most of the e-mails are directives from an attorney, the scheduling of meetings and calls, questions and e-mails from non-attorneys. Many other withheld e-mails are from non-attorneys and do not qualify for protection under the attorney-work product doctrine, i.e., mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

(*Id.*) Accordingly, OOR ordered the responsive records disclosed, along with redactions for the subset of six records that contained a few sentences of privileged information. The Trial Court concluded that there were no grounds upon which to disturb OOR's determination. We agree.

The City and the District Attorney asserted before the Trial Court, as they have in their brief to this Court, that the records responsive to Item No. 6 of Request I are protected by the attorney-work product privilege. However, a mere assertion of the privilege is insufficient to show its applicability. Before the Trial Court, it was incumbent upon the City and the District Attorney to put forth concrete evidence or fact-specific argument that, contrary to OOR's findings, the responsive records contain attorney-work product and that OOR erred in concluding that they had not met their evidentiary burden to show that the privilege applied. Instead, the City and the District Attorney did not offer any basis to dispute OOR's findings that the majority of the emails do not contain material protected by the attorney-work product privilege. The City and the District Attorney could have submitted such a fact-based argument to the Trial Court under seal if their concern was that discussing the material in a brief would necessitate disclosure of exactly what they were trying to protect but they chose instead to rely on a mere assertion of privilege and *Schenck*. They have done so again in this

Court and we are as equally unpersuaded as the Trial Court that OOR erred and that, excepting the portions of six emails redacted by OOR, the responsive documents are privileged from disclosure because the documents contain attorney-work product.

## Judicial Order

A party may also demonstrate that a record responsive to a request under the RTKL is exempt from disclosure due to a federal or state law, regulation, or a judicial order or decree. Section 305 of the RTKL, 65 P.S. § 67.305; *see, e.g.*, *Office of the Budget v. Campbell*, 25 A.3d 1318, 1320 (Pa. Cmwlth. 2011) (holding that because federal law exempted W-2 forms from disclosure, they were not public records under the RTKL). However, because the RTKL precludes a local agency from denying a request due to the intended use of the public record by the requester, the mere fact that the requester may be involved in litigation adverse to the local agency and was denied access to the record by a judicial order is of no moment to whether the record is accessible via the RTKL. *Michak v. Department of Public Welfare*, 56 A.3d 925, 930 (Pa. Cmwlth. 2012); *City of Allentown v. Brenan*, 52 A.3d 451 (Pa. Cmwlth. 2012); *Chester Community Charter School v. Hardy*, 38 A.3d 1079, 1089 (Pa. Cmwlth. 2012) (*Hardy I*), *vacated and remanded on other grounds*, 74 A.3d 118 (Pa. 2013) (*Hardy II*).[16] The analysis of whether a

---

[16] The Supreme Court's order in *Hardy II* stated:

> PER CURIAM.
>
> AND NOW, this 28th day of August, 2013, the Petition for Allowance of Appeal is GRANTED, LIMITED to the following issue as framed by Petitioner:
>
>> Does the Right–to–Know Law preclude a local agency from arguing on appeal to the Office of Open Records and to subsequent courts the bases

26

record is discoverable in this jurisdiction and beyond is entirely distinct from whether the record is accessible under the RTKL. For example, in *City of Allentown v. Brenan*, the city argued that an order denying a plaintiff supplemental discovery in civil litigation taking place in the United States District Court for the Eastern District of Pennsylvania precluded release of the same records as responsive to a RTKL request made by the plaintiff's attorney. 52 A.3d at 453. This Court disagreed, holding in *Brenan* that records responsive to a RTKL request are only exempted from disclosure by a judicial order or decree where the order precluded or protected the records from disclosure. *Id*. at 456. Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders in federal courts, providing, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the

---

> for denying access to a requested record that were not specifically cited in the agency's initial denial of the request for access?

> The Commonwealth Court's decision is VACATED and the matter is REMANDED for reconsideration in light of *Levy v. Senate of Pennsylvania*, [619] Pa. [586], 65 A.3d 361 (2013); *see Chester [Community] Charter [School] v. Hardy*, 38 A.3d 1079, 1087 (Pa. Cmwlth. 2012) ("Some of the records sought by Requester may reach beyond the governmental function performed by Management, but Charter School failed to so specify them in its written March 9, 2009, response."), without prejudice to Petitioner's ability to raise its other issues in a timely request for discretionary review following the Commonwealth Court's disposition on remand.

*Id*. at 119. The Court's order did not disturb this Court's holding that an automatic stay in a bankruptcy proceeding halting a defamation suit had no bearing on the validity of the requester's RTKL request, reasoning that "[i]t may be that [r]equester is using the [RTKL] to conduct discovery in the defamation action, which has been stayed. This result may seem unfair….Unfortunately for Charter School, it matters not. A requester's motive under the Right–to–Know Law has been made irrelevant by the legislature." *Hardy I*, 38 A.3d at 1088.

27

> action is pending….The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery;…(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters…[and] (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed R. Civ. P. 26(c). Pennsylvania Rule of Civil Procedure 4012(a) governs the issuance of protective orders in Pennsylvania and provides, in relevant part, that:

> Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following: (1) that the discovery or deposition shall be prohibited…(4) that certain matters shall not be inquired into…[and] (7) that a deposition shall be sealed and shall be opened only by order of the court….

Pa. R.C.P. No. 4012(a); *see also* Pa. R.C.P No. 4011 ("Limitations of Scope of Discovery. No discovery…shall be permitted which…(b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party…"). In both Pennsylvania and in the federal courts, protective orders are rare, disfavored, and require the party seeking a protective order to shoulder a heavy burden, which includes a particularized, fact-intensive showing of the necessity of the order. *See, e.g., Crum v.*

28

*Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578 (Pa. Super. 2006); *Stenger v. Lehigh Valley Hospital* (*Appeal of the Morning Call*), 554 A.2d 954 (Pa. Super. 1989); *see also Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006); *Baxter International, Inc. v. Abbot Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir. 1994). No such showing was made in *Brenan* or in the mandamus action where the Trial Court issued its September 26, 2014 order denying Requester's motion to compel. The order at issue in *Brenan* demonstrates the rationale for why the rules utilized for conducting discovery in litigation and resulting judicial orders regarding discovery do not inherently preclude a party to litigation from utilizing the RTKL; the order denying the plaintiff's motion to compel supplemental discovery was premised solely upon the untimeliness of the plaintiff's request and the plaintiff's lack of supporting authority to treat the request as timely. 52 A.3d at 456; *see also* Fed R. Civ. P. 26. Untimeliness is but one of many reasons why a judicial order denying a discovery request might be issued; chief among these reasons is relevancy.

In Pennsylvania, the discrete principles of standing, ripeness, mootness, the political question doctrine, and the proscription against issuing advisory opinions are prudential, judicially created principles designed to winnow out litigants who have no direct interest in a judicial matter and have not presented to the court a true case and controversy for which judicial relief is appropriate. *Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014); *Rendell v. Pennsylvania State Ethics Commission*, 983 A.2d 708, 717-718 (Pa. 2009); *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009).[17] Along with the discrete

---

[17] For example, standing exists where the underlying controversy is real and concrete because the party has been aggrieved and has a substantial, direct, and immediate interest in the outcome of

29

principles of ripeness, mootness, and the political question doctrine, standing and the proscription against issuing advisory opinions help to ensure that the courts do not stray beyond their authority and jurisdiction to usurp powers entrusted to the legislative and executive branches of government. *Rendell*, 983 A.2d at 717-718; *In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003). Although these prudential principles traditionally have the greatest impact at the outset of litigation, like subject matter jurisdiction, these principles also inform and constrain cases and controversies as litigation proceeds through the judicial process. In Pennsylvania, preliminary objections provide parties with an opportunity at the outset of a civil action to test the plaintiff's complaint and narrow the legal issues before the court to those for which judicial relief may be pursued. *See* Pa. R.C.P. No. 1028.[18]

---

the ligation; in contrast, where a party is not adversely affected by the matter he or she seeks to challenge or merely shares the same interest of all citizens in procuring obedience to the law, then the party lacks the necessary standing to pursue judicial relief. *Rendell*, 983 A.2d at 717-718; *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975) (plurality); *Parents United for Better Schools, Inc. v. School District of Philadelphia*, 646 A.2d 689, 690-692 (Pa. Cmwlth. 1994). Likewise, the proscription against issuing advisory opinions or decisions in the abstract restrains the courts of this commonwealth from addressing claims made, which at bottom seek merely an academic answer to a hypothetical question rather than redress of an injury. *Spahn v. Zoning Board of Adjustment*, 877 A.2d 1132, 1151 (Pa. 2009); *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005). In the federal system, these principles cluster around Article III of the United States Constitution, implicating the constitutional restraints placed on the judicial branch and the limits of federal jurisdiction. U.S. Const. art. III; *Lexmark International, Inc. v. Static Control Components, Inc.*, __ U.S. __, __, 134 S.Ct. 1377, 1386 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[18] While Pennsylvania does allow for pre-complaint discovery where a litigant has demonstrated that the information sought is both material and necessary to the filing of a complaint in a pending action and will not cause unreasonable annoyance, embarrassment, oppression, burden or expense, discovery generally commences after the initial pleadings have established discrete legal issues for the parties to litigate. Pa. R.C.P. Nos. 1017, 4001, 4003.8; *see also McNeil v. Jordan*, 894 A.2d 1260, 1278 (Pa. 2006) (addressing pre-complaint discovery prior to the adoption of Pa. R.C.P. No. 4003.8).

Pennsylvania has a long history of liberal discovery in order to further the truth-determining process essential to our judicial system, prevent unfair surprises should the matter proceed to trial, enhance an attorney's ability to strongly and effectively advocate for a client, and enable the efficient operation of our judicial system. Pennsylvania Rule of Civil Procedure 4003.1 provides that a "party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."[19] Although Pennsylvania Rule of Civil Procedure 4003.3 protects the work product of an attorney, it also permits the discovery of any matter discoverable under Rule 4003.1 even where it was prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative. Pa. R.C.P. Nos. 4003.1, 4003.3.

However, while the Pennsylvania Rules of Civil Procedure provide a broad scope for a party seeking discovery, the focal point at all times is relevancy. Discovery may not be used to search for information which is not reasonably calculated to lead to the discovery of admissible evidence or which has no bearing on the subject matter involved in the underlying action. Pa. R.C.P. No. 4003.1. In each instance a request for discovery is evaluated within the context of a given case presenting defined legal issues and, where there is a dispute, the court is called upon to assess the legitimacy, necessity, and burden to ultimately determine whether the specific request is relevant to the case at bar.

The question of whether a discovery request is relevant implicates the prudential principles that initially framed the action before the court; the request must relate to the actual case and controversy before the court for which a judicial remedy is sought and may not serve as a basis to sift willy-nilly through information held by an adverse party which would risk dragging the court beyond

_____

[19] *Compare* Federal Rule of Civil Procedure 26(b) regarding scope of discovery and limits.

its jurisdiction and authority. The discretion exercised by the court in granting or denying a discovery request goes straight to the heart of the judicial function and the prudential and ultimately constitutional constraints placed on judicial power. A RTKL request stands in stark contrast to a discovery request; the power is not judicial and is not constrained by relevancy. Instead, the power granted requesters by the RTKL is inquisitorial and investigative. Under the RTKL, the requester is empowered by the legislature—within explicit, enacted constraints—to go fishing, an exercise that is strictly prohibited even under the broad scope of the discovery rules and the liberal history of discovery in this Commonwealth.

In *United States v. Morton Salt Co*., 338 U.S. 632 (1950), two salt producers challenged the authority and jurisdiction of the Federal Trade Commission, claiming, *inter alia*, that the commission had invaded the province of the judiciary. The Court discussed the difference between the judicial function and the function of the commission, stating:

> Federal judicial power itself extends only to adjudication of cases and controversies and it is natural that its investigative powers should be jealously confined to these ends. The judicial subpoena power not only is subject to specific constitutional limitations, which also apply to administrative orders, such as those against self-incrimination, unreasonable search and seizure, and due process of law, but also is subject to those limitations inherent in the body that issues them because of the provisions of the Judiciary Article of the Constitution.

*Id*. at 642. By contrast, the Court described the power underlying the function of the commission as quite distinct from judicial power:

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

*Id*. at 643. The RTKL imbues requesters with an even greater power to request information than the inquisitorial and investigative power bestowed upon the commission, which the Court analogized to a grand jury. Like a grand jury or the commission, a RTKL request does not depend on a case or controversy; however, unlike a grand jury or the commission, a RTKL requester is not constrained by a need for suspicion that the law is being violated or for assurance that it is not, nor is a RTKL requester subject to the same constitutional restraints as a government actor. Instead, a requester has a legislatively granted and judicially enforceable right to secure information from the hands of government.

The rights afforded a requester under the RTKL are constrained by the presumption and exemptions contained in the law itself. *See* Section 305 and 708 of the RTKL, 65 P.S. § 67.305, 67.708. While the RTKL does countenance limited arguments concerning the burden of a request, issues such as annoyance and embarrassment, which may mitigate in favor of limiting the scope of a discovery request, have no weight in the RTKL context. *Department of Environmental Protection v. Legere/Times-Tribune*, 50 A.3d 260, 266 (Pa.

33

Cmwlth. 2012); *Mollick v. Township of Worcester*, 32 A.3d 859, 871 (Pa. Cmwlth. 2011). Likewise, the policy behind the exemptions contained in the RTKL may serve a party's argument against disclosure in litigation; however, the fact that information may not be publicly accessible under the RTKL does not answer the question of whether the information is relevant to a matter before the court in litigation and, therefore, subject to discovery by court order. Discovery conducted in a court of law and a request made under the RTKL are wholly separate processes and it is only in rare circumstances, such as the issuance of a protective order, that a judicial order or decree governing discovery in litigation will act to prevent disclosure of public information responsive to a RTKL request.

OOR and the Trial Court concluded that the City and the District Attorney failed to meet their burden to demonstrate the information responsive to Item No. 6 of Request I was protected by the attorney-work product privilege or exempt from disclosure by a judicial order or decree issued in pending litigation and, beyond their citation to *Schenck*, neither the City nor the District Attorney have offered any grounds upon which this Court should disturb the decisions below. Accordingly, we hold that *Schenck* is inopposite and we affirm the Trial Court's order that the documents responsive to Item No. 6 in Request I, exclusive of the redactions authorized in the six documents identified in OOR's decision, be disclosed to Requester.

## Request II Item Nos. 1 and 2

## Penalty

Next, we address the $500 penalty imposed by the Trial Court in its December 2, 2015 order because, although it came in the proceedings related to Request II, it is inextricably linked with the argument made by the District Attorney in both proceedings below that a judicial order denying access to

34

documents sought through the discovery process was determinative of whether the same documents were publicly accessible under the RTKL. Before this Court, the District Attorney contends that the Trial Court erred by not making the requisite evidentiary findings to support a conclusion that it had acted in bad faith.

The RTKL vests the trial court with jurisdiction to assess a local agency's compliance with the RTKL and grants the trial court authority to impose costs, attorney fees and civil penalties. *See* Section 1304 and 1305 of the RTKL, 65 P.S. §§ 67.1304-1305. Before imposing costs, fees or penalties, the trial court must make factual findings in support of its conclusion that the local agency has acted in bad faith. *Id.*; *see also Bowling II*, 75 A.3d at 458. Where the award is for attorney fees and costs, the trial court must make findings that either the local agency acted with a willful or wanton disregard, that the local agency's actions were not based on a reasonable interpretation of law, or that the local agency's appeal was frivolous. Section 1304 of the RTKL, 65 P.S. § 67.1304. Where the trial court imposes a civil penalty, rather than attorney fees and costs, the trial court must make findings that the local agency denied access to a public record in bad faith. Section 1305(a) of the RTKL, 65 P.S. § 67.1305(a).[20]

Under the RTKL, the provisions for costs, fees and penalties found in Sections 1304 and 1305 are contained in Chapter 13, which establishes the process for judicial review of OOR's determination; OOR does not have authority to impose costs, fees or penalties. Sections 1301-1310 of the RTKL, 65 P.S. §§ 67.1301-67.1310. Although the policy behind Sections 1304 and 1305 of the

---

[20] The statutory provisions in the RTKL do not prohibit a court from imposing penalties and costs in accordance with applicable rules of court or imposing sanctions following an adjudication of contempt. *See* Section 1304(c) of the RTKL, 65 P.S. § 67.1304(c); *West Pittston Borough v. LIW Investments, Inc.*, 119 A.3d 415, 421-422 (Pa. Cmwlth. 2015); *In re Contempt of Cullen*, 849 A.2d 1207, 1210-1211 (Pa. Super. 2004).

RTKL is similar, the two sections serve different purposes. Section 1304 of the RTKL seeks to remedy the damage to the requester where an agency has denied access to records in bad faith and to the agency where a requester has launched a frivolous challenge to a denial of access by restoring the requester or the agency to the place where each would have been prior to petitioning the court for review. 65 P.S. § 67.1304.

The text and purpose of Section 1305 of the RTKL are different. Section 1305(a) of the RTKL provides that, "[a] court may impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith." 65 P.S. § 67.1305(a). An example of bad faith is a local agency's failure to comply with the mandate of Section 901 of the RTKL, which requires that a local agency make a good faith search for information responsive to a request and determination of whether that information is public. 65 P.S. § 67.901; *Chambersburg Area School District v. Dorsey*, 97 A.3d 1281, 1291-1292 (Pa. Cmwlth. 2014). Section 1305(b) of the RTKL provides that "[a]n agency or public official who does not promptly comply with a court order under this act is subject to a civil penalty of not more than $500 per day until the public records are provided." 65 P.S. § 67.1305(b).

Unlike Section 1304, the text of Section 1305 of the RTKL is directed wholly to the agency charged with a mandatory duty under the RTKL to provide requesters access to public records within the agency's custody and control. Section 1305 of the RTKL places the requester, through the aegis of the court, in the role of the regulator and the agency in the role of a regulated entity subject to civil penalties for violation of a statute. *Compare Gibbons v. Bureau of Professional and Occupational Affairs*, 921 A.2d 551 (Pa. Cmwlth. 2007) (assessing penalty for failure to supervise in violation of Section 604(a)(16) of the

36

Real Estate Licensing and Registration Act, Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S, § 455.604(a)(16)); *Commonwealth ex rel. Corbett v. Manson*, 903 A.2d 69 (Pa. Cmwlth. 2006) (assessing penalties for deceptive conduct in violation of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1-201-9.3); *Westinghouse Electric Corp. v. Pennsylvania Department of Environmental Protection*, 745 A.3d 1277 (Pa. Cmwlth. 2000) (assessing penalties for violation of the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001). Unlike Section 1304, the purpose of Section 1305 of the RTKL is not to remedy harm to a party but to penalize conduct of a local agency and to provide a deterrent in the form of a monetary penalty in order to prevent acts taken in bad faith in the future. The purpose of Section 1305 of the RTKL is akin to the purpose of the penalty provision of the Sunshine Act, which makes it a summary offense for "[a]ny member of any agency who participates in a meeting with the intent and purpose by that member of violating this chapter," and provides that upon conviction, the member shall pay the costs of prosecution plus a fine within a defined range, the exact amount of which to be determined by the sentencing authority. 65 Pa. C.S. § 714. However, unlike the penalty provision in the Sunshine Act, the focus in Section 1305 of the RTKL is not on the mental state of the actor but the actions taken by the agency. *Compare* Section 1304(a)(1) of the RTKL, 65 P.S. § 67.1304(a)(1).

In the instant matter, the Trial Court concluded that costs and attorney fees under Section 1304 of the RTKL were not appropriate; however, the Trial Court concluded that under Section 1305(a) of the RTKL the actions taken by the District Attorney in denying Requester access to a public record amounted to bad faith and that a $500 penalty payable to the court was appropriate. Contrary to the

District Attorney's argument, the Trial Court made a series of findings regarding the District Attorney's denial of access to Item Nos. 1 and 2 of Request II based on the record. Although the record created prior to a hearing on a motion made pursuant to Sections 1304 and 1305 of the RTKL may not always provide sufficient evidence to support a conclusion that a local agency acted in bad faith as a matter of law and it may be necessary for the trial court to take additional evidence, such was not the situation here. Instead, as noted by the Trial Court, from the initial response to Item Nos. 1 and 2 of Request II, to the petition for review filed with the Trial Court, the record is replete with evidence of the District Attorney's bad faith in denying Requester access to public records. (Nos. 2627/2641 C.D. 2015: 1925(a) Op. at 10; S.R. December 1, 2015 H.T. at 41-44.)

The initial response from the District Attorney denying Requester access to Item Nos. 1 and 2 of Request II failed to conform to the duties imposed by the RTKL in several respects. First, the District Attorney based its denial on the identity of the requester and the presumed intended use of the records in violation of Section 302 of the RTKL, 65 P.S. § 67.302. (Nos. 2627/2641 C.D. 2015: 1925(a) Op. at 9; S.R. December 1, 2015 H.T. at 10-11); *see also* Section 703 of the RTKL, 65 P.S. § 67.703. Second, the District Attorney failed to cite any legal authority in support of its reasons for denial in violation of Section 903 of the RTKL, 65 P.S. § 67.903. (Nos. 2627/2641 C.D. 2015: 1925(a) Op. at 9; S.R. December 1, 2015 H.T. at 19-20; *see also* C.R. November 10, 2014 District Attorney Response to Records Request, R.R. at 153a.) Third, the District Attorney did not make a good faith search for the requested records in violation of Section 901 of the RTKL, 65 P.S. § 67.901. (Nos. 2627/2641 C.D. 2015: 1925(a) Op. at 9; S.R. December 1, 2015 H.T. at 28, 32-33, 39, 42-43; *see also* C.R. November 10, 2014 District Attorney Response to Records Request, R.R. at 153a.) Finally, we

agree with the Trial Court that the District Attorney's representation of binding precedent and the state of the law in this Commonwealth throughout these proceedings was deficient at best.[21]  (Nos. 2627/2641 C.D. 2015: 1925(a) Op. at 10; S.R. December 1, 2015 H.T. at 26, 33-34.).  Accordingly, we conclude that the Trial Court made the requisite factual findings, supported by substantial record evidence, to conclude as a matter of law that the District Attorney acted in bad faith by denying Requester access to Item Nos. 1 and 2 of Request II and that the Trial Court did not err in imposing a $500 penalty pursuant to Section 1305 of the RTKL.

## Request II Item Nos. 7 and 8

## Sufficient Specificity

Next, the District Attorney argues that Item Nos. 7 and 8 of Request II were insufficiently specific and that it should not be required to search for and produce documents in response to such an overly broad request.  The District Attorney contends that Item Nos. 7 and 8 are insufficiently specific because of the timeframes given, the request for multiple types of documents, including emails without identified senders and recipients, and an opaque subject matter without the provision of terms to narrow the District Attorney's search parameters.  We disagree.

Where a requester seeks to gain access to information under the RTKL, Section 703 of the RTKL puts the initial burden on the requester to provide a written request that "should identify or describe the records sought with

---

[21] As the Trial Court's generosity may have gone unnoticed, we remind counsel of Rule 3.3 of the Rules of Professional Conduct; while counsel certainly has a duty to pursue a favorable litigation strategy and make good faith arguments for an extension, modification or reversal of existing law, the line between zealous advocacy and failure to adhere to counsel's duty of candor towards the tribunal is neither fine nor grey.  Pa. R.P.C. 3.3; *see also* Pa. R.P.C. 3.1; *Robinson v. City of Philadelphia*, 666 A.2d 1141, 1143 (Pa. Cmwlth. 1995).

sufficient specificity to enable the agency to ascertain which records are being requested and shall include the name and address to which the agency should address its response." 65 P.S. § 67.703; *Mollick* 32 A.3d at 871. In determining whether a request is sufficiently specific, an agency should rely on the common meaning of words and phrases, be mindful of the remedial purpose of the RTKL, and construe the specificity of the request in the context of the request, rather than envisioning everything the request might conceivably encompass. *Pennsylvania State Police v. Office of Open Records*, 995 A.2d 515, 517 (Pa. Cmwlth. 2010). The fact that a request is burdensome will not, in and of itself, deem the request to be overbroad. *Department of Environmental Protection v. Legere*, 50 A.3d 260, 265 (Pa. Cmwlth. 2012). However, an open-ended request that fails to give a local agency guidance in its search for the information sought may be so burdensome that the request will be found overbroad under the RTKL. *Commonwealth v. Engelkemier*, 148 A.3d 522, 530 (Pa. Cmwlth. 2016); *Montgomery County v. Iverson*, 50 A.3d 281, 283 (Pa. Cmwlth. 2012) (*en banc*).

In *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Cmwlth. 2015), this Court set forth a three-part balancing test to evaluate whether a request was sufficiently specific, examining whether the request identified: (1) the subject matter of the request; (2) the scope of the documents sought; and (3) the timeframe for the records sought. *Id*. at 1125; *see also Carey v. Department of Corrections*, 61 A.3d 367, 372 (Pa. Cmwlth. 2013). While this test is a flexible one, the requirement that a requester identify the subject matter of a request necessitates that a requester "identify the transaction or activity of the agency for which the record is sought." *Pittsburgh Post-Gazette*, 119 A.3d at 1125; *see also* Section 102 of the RTKL, 65 P.S. § 67.102; *Mollick*, 32 A.3d at 871. In addition, the requirement that a requester identify the scope of the

documents sought necessitates that a requester "identify a discrete group of documents either by type…or recipient." *Pittsburgh Post-Gazette*, 119 A.3d at 1125 (*citing Carey*, 61 A.3d at 372). Finally, although the timeframe element of the "sufficiently specific" test is the most fluid when evaluating a requester's request, the request should identify "a finite period of time for which records are sought." *Id.* at 1126; *see also Department of Corrections v. St. Hilaire*, 128 A.3d 859, 864 (Pa. Cmwlth. 2015); *compare Legere*, 50 A.3d at 265 *with Mollick*, 32 A.3d at 871.

> Item No. 7 of Request II asks for:

> 7. All e-mails, memos and letters exchanged by the [District Attorney] and the [City's] Office of Innovation and Technology between July 1, 2013 and October 1, 2014 pertaining to searching for e-mails on the [City's] e-mail servers and/or backup copies of the [City's] e-mail servers;

(Nos. 2627/2641 C.D. 2015: C.R. Records Request II.). OOR concluded that Item No. 7 of Request II was sufficiently specific because it "clearly specifies the types of records (e-mails, memoranda and letters); the subject matter (searching for e-mails on the [City's] e-mail servers and/or backup copies of the [City's] e-mail servers); and a timeframe (July 1, 2013 and October 1, 2014). With respect to the senders and recipients, Item [No.] 7 seeks records between *all employees* of the [District Attorney] and the [City's] Office of Innovation and Technology." (Nos. 2627/2641 C.D. 2015: C.R. OOR Decision at 12, R.R. at 235a.) The Trial Court agreed that Item No. 7 of Request II was sufficiently specific, holding that the "universe of documents exchanged between the District Attorney and the City's Office of Innovation and Technology over 15 months relating to the topic of

41

searching for emails or backup copies is specific enough for the District Attorney to respond in accordance with the RTKL." (Nos. 2627/2641 C.D. 2015: Trial Court Op. at 7.)

Item No. 8 of Request II asks for:

> 8. All e-mails, letters and memos pertaining to the [District Attorney's] transition from Lotus Notes e-mail platform to the Microsoft Exchange e-mail platform between January 1, 2013 and December 31, 2013;

(Nos. 2627/2641 C.D. 2015: C.R. Records Request II.). OOR concluded that Item No. 8 of Request II was sufficiently specific because it "provides a very clear subject matter (the [District Attorney's] transition from Lotus Notes to Microsoft Exchange); a timeframe (January 1, 2013 through December 31, 2013); and identifies the types of records sought (e-mails, letters and memos)." (Nos. 2627/2641 C.D. 2015: C.R. OOR Decision at 12, R.R. at 235a.) Moreover, in regards to both Item Nos. 7 and 8 of Request II, OOR concluded that "[b]ecause Items 7 and 8 clearly identify the types of records sought, the subject matter, and timeframes, it is not necessary for the Requester to name senders and recipients." (*Id.*) The Trial Court agreed, holding that Item No. 8 of Request II was sufficiently specific. (Nos. 2627/2641 C.D. 2015: Trial Court Op. at 7-8.)

The District Attorney contends that OOR's conclusions and the Trial Court's holdings were in error. The District Attorney argues that Item Nos. 7 and 8 of Request II do not satisfy the subject matter prong of the sufficiently specific test because neither Item No. 7 nor Item No. 8 provide clear search terms for the District Attorney to use in its search for responsive records. In support of its argument, the District Attorney relies upon *Iverson*, where this Court held that a

42

request for all emails in the possession of Montgomery County that traveled to and from identified domain names and included one of fourteen keyword terms was not sufficiently specific. 50 A.3d at 282. Our holding in *Iverson* was based on the conclusion that:

> The [r]equest provides no timeframe with regard to the emails it seeks. It does not identify specific individuals, email addresses, or even departments, but requests any applicable emails sent from the County's domain to four other domains. There is no context within which the search may be narrowed. It is true that the Request limits the emails sought to those that have one of fourteen terms in the subject line; however, some of these search terms, such as "Trail," are incredibly broad.

*Id*. at 284. *Iverson* did not hold that for a request to be sufficiently specific a requester was required to identify specific search terms; in fact, as the concurring opinion by then President Judge Pellegrini noted, *Iverson* represented the first instance where this Court was called upon to evaluate the specificity of a RTKL request based upon a keyword search. *Id*. at 285 (concurring); *see also Commonwealth v. Engelkemier*, 148 A.3d 522 (Pa. Cmwlth. 2016).[22] Rather,

---

[22] In *Engelkemier*, we discussed the difficulties that may arise when a requester submits a keyword list as opposed to a specific subject matter:

> A keyword list is not necessarily a substitute for a properly-defined subject matter(s)—i.e., a particular transaction or activity of an agency. If terms on a list are too general or too broad, a requester runs the risk that the request will be rejected for lack of specificity, if not by the agency then by the OOR or this Court. A clearly-defined subject matter, such as "liquor privatization," by contrast, has a better chance of passing the specificity test. It is true that a requester's intent—i.e., the purpose or motivation underlying a request—is not a relevant consideration under the RTKL. As we observed in *Iverson*, however, this statutory shield does not

43

although *Iverson* was decided prior to this Court's clear recitation of the sufficiently specific test in *Pittsburgh-Post Gazette*, the reasoning in *Iverson* highlights the flexible, cases by case, contextual application of the test. The request in *Iverson* not only failed each prong of the sufficiently specific test, but the use of search terms alone deprived the open records officer charged with responding to the request of any context within which to search for responsive documents. In *Mollick*, this Court reached a similar conclusion. The request in *Mollick* sought: "(1) all emails between the Supervisors regarding any Township business and/or activities for the past one and five years; and (2) all emails between the Supervisors and the Township employees regarding any Township business and/or activities for the past one and five years." 32 A.3d at 871. We concluded that the request was overly broad because it failed to identify specific business or activities that the request sought information related to and would burden the agency with examining all its emails for an extended period of time with no parameters to guide its search; therefore, we held that the request in *Mollick* was insufficiently specific under Section 703 of the RTKL. *Id*. at 871-872.

By contrast, we held in *Legere* that a request seeking all determination letters and orders issued by the Department of Environmental Protection pursuant to identified statutory provisions from January 1, 2008 until the date of the request was sufficiently specific. 50 A.3d at 262, 265. Our holding was based on the fact that the request in *Legere* sought a "clearly defined universe of documents" that did not require "files to be reviewed and judgments to be made as to the *relation* of the documents to the specific request," unlike the request in *Mollick*. *Legere*, 50

---

absolve a requester of his initial obligation to "inform[ ] an agency with sufficient specificity of the records requested.

*Engelkemier*, 148 A.3d at 531 (internal citations & n.8 omitted).

A.3d at 265. This Court also rejected the argument in *Legere* that the burden imposed by the request rendered the request insufficiently specific, clearly holding that a burden stemming from an agency's organization and maintenance of its information, as opposed to a request seeking a vast array of documents without sufficiently specific guidance to the agency about what was sought, will not be weighed against the requester and permit an agency to deny access to information pursuant to the RTKL. *Id.* Likewise, we held in *St. Hilaire* that a request which sought "all records that document inmate injuries/deaths" was not insufficiently specific, even though it sought "all records," because the request identified a clearly defined set of documents (records that document inmate injuries), a specific subject matter (inmate injuries), and a specific time period (January 2009 through December 2014). *Id.* at 864. Furthermore, in *St. Hilaire*, we rejected the argument that the request was overbroad and burdensome because it would require the Department of Corrections to review every medical incident/injury report to determine whether the report identifies an inmate injury or not, reiterating that where a request is sufficiently specific an agency cannot escape its obligations under the RTKL by claiming that the way the agency maintains or organizes its information, standing alone, renders a request overbroad or burdensome. *Id.* at 865; *see also Carey*, 61 A.3d at 372 ("a burden on an agency attendant to gathering responsive records does not pertain to sufficiency of a request or render it non-specific.").

As in *Legere* and *St. Hilaire*, and unlike *Iverson* and *Mollick*, the request here seeks a clearly defined universe of documents. Moreover, any contention that the manner in which the District Attorney maintains information should excuse compliance with the RTKL, rather than an inability to respond to a request because the request seeks an undefined universe of documents, is without

45

merit. The District Attorney argues that Item Nos. 7 and 8 would require its Open Records Officer to visit each individual employee of the District Attorney and inquire whether the employees have responsive documents. In support of this argument, the District Attorney relies upon *Department of Labor and Industry v. Earley*, 126 A.3d 355 (Pa. Cmwlth. 2015). However, its reliance is misplaced. In *Earley*, the issue before this Court was whether the Department of Labor and Industry had met its burden of demonstrating that the records sought by the requester did not exist. *Id*. at 357. We held that the Department of Labor and Industry had failed to meet its burden. *Id*. Instead, we concluded that the Department of Labor and Industry had established by affidavits that the individuals named in the request did not have the records in their possession in the form of email messages received or sent and that, having so established, the Department was not obligated "to see if any of the other 7,000 employees have an email from each of those individuals when there is no evidence that an email had been sent to a particular party outside those identified in the request." *Id*. at 357. However, we also concluded that the Department of Labor and Industry did have an obligation to search its servers for any deleted emails pertaining to the request and, therefore, absent an affidavit or similar evidence attesting to the absence of any responsive information on the Department's servers, it had not met its burden to demonstrate that records responsive to the request did not exist. *Id*. at 358.

The District Attorney's argument in the instant matter is distinguishable from the situation in *Earley*; rather than arguing that it searched for information responsive to Item Nos. 7 and 8 of Request II and responsive records do not exist, the District Attorney is arguing that it does not have to determine whether responsive records exist because the request is insufficiently specific. In addition, the Department of Labor and Industry's duty to search for responsive

records in *Earley* was constrained by the request. The request in *Earley* was limited to emails sent or received by identified individuals and the record was devoid of evidence that emails responsive to the request had been exchanged with other employees. In the instant matter, Item Nos. 7 and 8 defined the specific universe of documents sought by type rather than individual senders and recipients. Neither *Pittsburgh-Post Gazette* nor the RTKL require that a request including emails as the type of documents sought by the request identify the sender and recipient, for *Earley* aside, such information may be exactly what the requester is seeking to discover. A requester must sufficiently define the scope of the request to enable the local agency to ascertain which records are being sought; in *Pittsburgh-Post Gazette* we stated that identifying the type of document or the recipient are two ways a requester may sufficiently define the scope, although these methods are surely not all inclusive. In the instant matter, the Requester defined the scope of Item Nos. 7 and 8 by the type of documents sought and, by doing so, satisfied the scope element of the sufficiently specific test.

Finally, the District Attorney baldly argues that the 15-month timeframe identified in Item No. 7 of Request II and the 12-month timeframe identified in Item No. 8 of Request II are overly broad. There is no merit to this argument. The timeframe is finite and the District Attorney has put forth neither argument nor evidence to establish that the timeframe identified somehow renders Item Nos. 7 and 8 of Request II insufficiently specific. *See Askew v. Office of Governor*, 65 A.3d 989, 992 (Pa. Cmwlth. 2013) (discussing instances where the timeframe either identified or not identified in a request impacted the issue of whether the request was sufficiently specific).

47

Accordingly, we conclude that Item Nos. 7 and 8 of Request II were sufficiently specific and that the Trial Court did nor err in affirming OOR on this basis.

### III. Conclusion

Discerning no error, we affirm the order issued by the Trial Court on February 17, 2016, appealed by the City and the District Attorney, consolidated by this Court and docketed at Nos. 435 and 473 C.D. 2016, and we affirm the orders issued by the Trial Court on October 23, 2015, and on December 2, 2015, appealed by the District Attorney and consolidated and docketed by this Court at Nos. 2627 and 2641 C.D. 2015.

**_____**
**JAMES GARDNER COLINS, Senior Judge**

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| City of Philadelphia,<br>　　　　　　　Appellant | : <br> : <br> : <br> : |
| v. | : <br> : |
| Ryan Bagwell | : CASES CONSOLIDATED<br> : Nos. 435, 473 C.D. 2016 |
| City of Philadelphia | : <br> : |
| v. | : <br> : |
| Ryan Bagwell | : <br> : |
| Appeal of: Office of District Attorney<br>of Philadelphia | : <br> : |

# O R D E R

AND NOW, this 16th day of February, 2017, the February 17, 2016 order of the Court of Common Pleas of Philadelphia County in the above-captioned matters is, hereby, AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Office of the District Attorney of Philadelphia,

            Appellant

        v.

Ryan Bagwell

Office of the District Attorney of Philadelphia,

            Appellant

        v.

Ryan Bagwell

:
:
:
:
:
:
:
: CASES CONSOLIDATED
: Nos. 2627, 2641 C.D. 2015
:
:
:
:
:
:
:
:

## O R D E R

AND NOW, this 16th day of February, 2017, the October 23, 2015 and December 2, 2015 orders of the Court of Common Pleas of Philadelphia County in the above-captioned matter are, hereby, AFFIRMED.

_____

**JAMES GARDNER COLINS, Senior Judge**