Janet and Scott Brunermer,  :
               Appellants  :
                 :
      v.  :
                 :  Nos. 746, 747, 748 & 749 C.D. 2022
Apollo Borough  :  Submitted: April 21, 2023


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: October 19, 2023


In these consolidated matters, Janet and Scott Brunermer (Brunermers) appeal from the June 29, 2022, order of the Court of Common Pleas of Armstrong County (trial court). The trial court dismissed the Brunermers' mandamus petitions arising from the Brunermers' Right-to-Know Law (RTKL)[1] requests to Apollo Borough (Borough). The trial court also denied the Brunermers' petitions seeking to impose attorneys' fees, penalties, and civil contempt on the Borough. Upon review, we affirm.


## I. Factual & Procedural Background

During June, July, and August of 2019, the Brunermers filed multiple RTKL requests with the Borough seeking, *inter alia*, the following records:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

documents concerning a property they owned at 719 North Warren Avenue and another property at 723 North Warren Avenue, correspondence previously sent by Borough officials to the Brunermers, lists of vacant properties in the Borough, the Borough zoning map, information concerning vacancy inspections generally, sections of the Borough's ordinances concerning vacancy and "change of use" requirements, and the qualifications of the Borough's zoning officer and code officials.[2]  Reproduced Record (R.R.) at 104a-95a.

According to the Brunermers, the Borough either did not respond or did not respond satisfactorily.  R.R. at 104a-95a. The Brunermers thereafter obtained final determinations from the Office of Open Records (OOR) finding the Borough in violation of the RTKL and directing the Borough to provide responsive documents or appeal within 30 days.  *Id.*  The Borough did not appeal and, according to the Brunermers, the Borough again failed to respond or to respond satisfactorily.  *Id*. Therefore, between August and November of 2019, the Brunermers filed four mandamus petitions with the trial court seeking enforcement of the OOR determinations.  *Id*.  The Borough filed answers with new matter.  *Id*. at 1a-21a.

On December 13, 2019, Deanna Shupe (Shupe), the Borough's secretary/treasurer and RTKL records officer, testified in a deposition.  R.R. at 1398a.  She was unaware of records pertaining to 723 North Warren Avenue but stated that she and her assistant did their best looking for records pertaining to 719

---

[2] The record includes a transcript of criminal proceedings associated with a July 2018 citation stating that the Brunermers failed to have the property at 719 North Warren Avenue inspected and registered pursuant to the Borough's vacancy ordinance.  Reproduced Record (R.R.) at 1336a-37a.  The Brunermers disputed the Borough's treatment of the property as vacant, but after a June 24, 2019, bench trial, the trial court found the Brunermers (specifically Janet Brunermer) guilty of violating the ordinance and imposed a $500 fine.  *Id.* at 1390a.  The Brunermers' first RTKL request in this matter was sent to the Borough on June 11, 2019.  *Id.* at 104a.

2

North Warren Avenue (the Brunermers' property) or the other aspects of the requests and anything they found had been provided to the Borough's counsel to fulfill the requests. *Id.* at 1403a-07a & 1413a-16a.

Brenda Troup (Troup), the Borough's zoning officer since 2012, also testified in a deposition on the same date. R.R. at 1418a. She helped prepare the Borough's responses to the requests by looking through her inspection records and providing what she found to the Borough's counsel. *Id.* at 1422a. She stated that the Borough keeps a list of vacant properties and inspection dates for those properties but acknowledged that other related information such as water usage reports or previous police citations for property upkeep or other violations might also have information relative to vacancies in the Borough. *Id.* at 1425a. She was not aware of a single centralized list that includes every vacant property and all information about all vacant properties. *Id.* She is familiar with 719 North Warren Avenue and stated that in late 2016, people connected with the church that operated there before told her that the property was not being used and was for sale. *Id.* She did not specify the building at that time for vacancy citations or formal inclusion on the vacancy list because she decided to wait for new owners; therefore, there would be no official vacancy documentation on the property prior to the Brunermers' acquisition in April 2017. *Id.* at 1426a. Troup stated that she conducts most of the Borough's vacancy inspections; other people can do them, but that is a rare occurrence and there is no formal list of alternative inspectors or their qualifications. *Id.* at 1428a.

The trial court held a hearing on all four of the Brunermers' petitions on January 15, 2020. R.R. at 22a-64a. Testimony was taken from Grant Kanish (Kanish), whose company contracted with the Borough to enforce construction

3

codes and manage "change of use" applications. *Id.* at 29a. His company kept documents and drawings as needed during the pendency of an application and inspection process but returned them to the Borough afterwards; his company did not keep copies or know what happened to the documents after his company returned them to the Borough. *Id.* at 32a-39a. He recalled inspecting 719 North Warren Avenue in April 2017 and issuing a temporary certificate of use and occupancy when the Brunermers acquired it; he told them that if they wanted to change its use from the previous classification as a church to anything else, they would have to obtain a permit for change of use or occupancy, which would go through his company. *Id.* at 32a & 39a-40a & 45a. He also recalled speaking with Borough counsel about the Brunermers' RTKL requests and providing what he had, which was correspondence between himself and the Brunermers concerning change of use or occupancy at the property and a copy of the temporary occupancy permit he completed after the inspection. *Id.* at 42a-45a. He stated that he prepared no reports or documents other than the actual temporary occupancy permit he issued. *Id*. at 46a.

Scott Brunermer also testified on January 15, 2020. R.R. at 47a. He stated that the Borough's responses to the Brunermers' RTKL requests did not include any affidavits from Borough personnel. *Id.* He explained that in part, the requests were intended to determine whether the property at 719 North Warren Avenue had been cited as vacant when it was a church before the Brunermers acquired it. *Id.* at 50a. He stated that the Borough's initial response and provision of a list of vacant buildings in the Borough was not "current," but he acknowledged that the Brunermers ultimately did receive updated information. *Id.* at 52a & 58a.

On the same day, January 15, 2020, the trial court issued a consent order signed by both sides and directing the Borough to produce additional documents or

4

affidavits within 14 days. R.R. at 464a-69a. The order stated that failure to comply could expose the Borough to penalties, attorneys' fees, and sanctions pursuant to the RTKL. *Id.* On January 28, 2020, the trial court issued a second consent order giving the Borough an additional week to fully comply with the January 15, 2020, order. *Id*. at 470a. On January 29, 2020, the Borough's counsel sent the Brunermers about 60 pages of documents pursuant to the trial court's January 15, 2020, order. *Id*. at 1441a-1502a. On February 5, 2020, the Borough sent the Brunermers Shupe's unsworn attestation stating that she had thoroughly searched the Borough's files and contacted everyone who might be able to provide information or documents responsive to the RTKL requests. *Id.* at 1504a-08a. Shupe attested that everything in the Borough's possession had been provided in its previous responses up to and including January 29, 2020. *Id.* at 1506a. The attestation also included a list of items from the requests that Shupe could not produce because after her good faith search, she concluded that the requested items either were not in the Borough's possession or did not exist. *Id.* at 1506a-08a.

On February 20, 2020, the trial court held a compliance hearing for the now-consolidated matters. R.R. at 69a-78a. The Brunermers' counsel announced a stipulation by the parties that "there [are] no active cases open before the [OOR] involving the [Brunermers] in Apollo Borough" and that as to the Brunermers' property at 719 North Warren Avenue, "we are willing to stipulate that at this time – at this moment the [B]orough has met its burden of proof that there are no responsive records." *Id*. at 70a-71a. However, the Brunermers reserved their right to "make other arguments as set forth in our proposed order and our summary, our legal position as to what happened related to those records and the timeline." *Id*. The Brunermers' counsel then testified as to his RTKL expertise and qualifications

5

in association with the Brunermers' reserved right to seek attorneys' fees, which at the time totaled roughly $28,000. *Id*. at 73a-77a. Shortly thereafter, the Brunermers' counsel, seemingly contradicting his previous stipulation, stated that "this Court has to decide if they have proven they don't have records . . . [O]ur position, just briefly, is that they have not met their burden entirely." R.R. at 79a. The trial court ordered the parties to brief their issues. *Id*. at 471a.

On March 3, 2020, the Brunermers filed a motion for RTKL sanctions and attorneys' fees against the Borough. R.R. at 474a-77a. The motion asserted that documents produced by the Borough in association with the February 20, 2020, hearing "confirmed the existence of" three additional documents concerning the 719 North Warren Avenue property that should have been produced pursuant to the January 28, 2020, order, but had not yet been provided. *Id*. at 475a. The motion averred that the recently disclosed documents also showed Borough employees using personal non-government email addresses for Borough business, including as to the property at issue. *Id*. at 476a-77a. The Brunermers asked the Court to order production and an accounting concerning those emails, as the Brunermers believed this "new evidence" undermined the Borough's assertion of its "good faith." *Id*. at 476a-77a.

On March 12, 2020, the trial court issued a third consent order directing the Borough to provide either the additional records or affidavits within 14 days. R.R. at 513a-14a. No further docket activity occurred in the trial court until the parties filed their briefs in June 2020. *Id*. at 2a, 515a-30a & 641a-81a. The Borough asserted that it had produced everything it had in good faith, given its small staff and difficulties with locating documents. *Id*. at 515a-30a. The Brunermers maintained that the Borough had still not produced everything and that bad faith sanctions were

6

warranted. *Id*. at 641a-81a. On September 18, 2020, the Brunermers filed a second motion for sanctions. R.R. at 857a-81a. In addition to their March 2020 motion for sanctions under the RTKL, the Brunermers sought civil sanctions, including contempt, against the Borough for failure to comply with the orders the trial court issued in January and March 2020. *Id*.

On October 9, 2020, the trial court issued a decision and order on the Brunermers' motions for sanctions. R.R. at 1003a-10a. The trial court held that the Borough's actions did not constitute wanton or willful disregard or bad faith under the RTKL; therefore, attorneys' fees, civil contempt, and "bad faith" RTKL sanctions were not warranted. *Id*. at 1008a-09a. The trial court declined to rule on the Brunermers' motion for lesser RTKL "noncompliance" sanctions, stating that to do so would be premature at that time. *Id*. at 1009a-10a. The Borough filed an answer in November 2020 stating that it had searched for all records to the best of its ability and had produced everything it possessed. *Id*. at 1013a-29a.

On August 19, 2021, the trial court held argument on the Brunermers' September 2020 motion for civil contempt or other sanctions. R.R. at 84a-102a. Counsel for the Borough confirmed that no further documents or affidavits had been provided since its November 2020 response to the Brunermers' motion. *Id*. at 88a. Counsel for the Brunermers asserted that the Borough had still not provided everything ordered by the trial court; counsel then updated his testimony concerning the Brunermers' request for attorneys' fees, which by that time amounted to roughly $54,000. *Id*. at 89a-100a. Counsel for the Borough responded that the Borough had done its best with limited staff and resources to respond to the Brunermers' multiple requests and litigation efforts over the past two years and that although "mistakes

7

were made" along the way, sanctions were not warranted under the RTKL or in the civil context. *Id*. at 100a-02a.

Later that same day, the trial court issued an order stating that as to the Brunermers' September 2020 petition for civil contempt or other sanctions, the Borough had until September 10, 2021, to provide any additional documents or affidavits, with briefing on all outstanding issues to follow. R.R. at 1032a. On September 10, 2021, the Borough filed an affidavit by Shupe, who attested that she conducted a good faith search of all potentially relevant and available sources, that the Borough had produced everything it had, and that it possessed nothing else pertaining to the Brunermers' requests. *Id*. at 1033a-39a. Attached to the September 10, 2021, affidavit were three documents that had not been part of the Brunermers' original requests, but were referred to in a February 25, 2019, email from Troup, the zoning officer, to Kanish, and were part of the trial court's March 12, 2020, consent order. *Id*. at 1039a, 1055a-59a; *see also id*. at 474a-77a, 490a & 513a-14a. The parties filed their final briefs to the trial court later in 2021, largely restating the positions asserted at the August 2021 hearing. *Id*. at 1061a-1128a.

On June 29, 2022, the trial court issued its final order. R.R. at 1152a-53a. The court first stated that its January 2020 consent orders disposed of the Brunermers' mandamus petitions seeking enforcement of the various OOR determinations. *Id*. at 1152a. The court next confirmed its October 2020 decision and order denying the Brunermers' motion for RTKL sanctions. *Id*. at 1152a-53a. The court next concluded that the Borough had not acted in willful violation or contempt of the court's January 2020 orders and that neither civil contempt nor penalties under the RTKL were warranted. *Id*. at 1153a. Last, the court held that

8

the Borough's RTKL responses "are sufficient and that no further documents or affidavits need be submitted by the Borough to the [Brunermers]." *Id.*

The Brunermers appealed the trial court's June 2022 order to this Court.[3] R.R. at 1156a. In its subsequent Pa.R.A.P. Rule 1925(a) opinion, the trial court incorporated by reference its October 9, 2020, decision and order and stated that "[o]n that basis, the Court recommends affirmance in all respects." *Id.* at 1211a-12a.

## II. Issues

The Brunermers raise three issues on appeal to this Court. First, they assert that the trial court erred in concluding that the Borough had produced all available records in response to the RTKL requests.[4] Brunermers' Br. at 4. Next, they assert that the trial court erred in declining to award penalties and attorneys' fees pursuant to the RTKL. *Id.* Last, they assert that the trial court erred in declining to find the Borough in civil contempt for failing to comply with the trial court's prior orders requiring the Borough to produce records in response to the Brunermers' RTKL requests.

---

[3] We previously addressed an appeal by the Brunermers of different RTKL requests to the Borough. *Brunermer v. Apollo Borough* (Pa. Cmwlth., No. 661 C.D. 2021, filed July 28, 2022), 2022 WL 2976345 (unreported) (*Brunermer I*) (affirming the trial court's award of RTKL relief to the Brunermers by ordering the Township to conduct a good faith search for additional responsive records but denying the Brunermers' request for attorneys' fees and penalties).

[4] "[A]n action in mandamus before a court of common pleas is available once a party's right to the record has been established through a final [OOR] determination," as the Brunermers did here. *See Capinski v. Upper Pottsgrove Twp.*, 164 A.3d 601, 609 (Pa. Cmwlth. 2017). In this context, our review is appellate in nature and we consider "whether the trial court's findings of fact are supported by substantial evidence or whether the trial court committed an error of law or abused its discretion. Our standard of review on findings of fact is deferential but *de novo* on issues of law." *Id.* at 604 n.4.

9

## III.  Discussion

### A.  Sufficiency of Borough's Response to RTKL Requests

The RTKL is "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011).  As such, public records must be disclosed by a governmental entity if they are requested pursuant to the RTKL.  *Id.*  However, the entity is not required to create a record if the requested record does not exist.  *Id.* (citing Section 705 of the RTKL, 65 P.S. § 67.705.9).  The burden of proving a record does not exist, or is exempt from disclosure, is placed on the agency responding to the request.  *Id.* (citing Section 708 of the RTKL, 65 P.S. § 67.708). This Court has stated that a governmental entity may satisfy its burden of proving that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record.  *Id.*

In *Hodges*, the requester, an inmate, sought certain records from the Department of Health (DOH) regarding prison healthcare.  29 A.3d at 1191.  In an affidavit, the DOH's records officer attested that she conducted a good faith search and determined that the DOH did not possess the requested records; she acknowledged, however, that the records might exist under another classification or title.  *Id.* at 1193.  This Court concluded that the DOH's affidavit was sufficient and that it "was not required to sift through all of its records in order to determine if something under a different spelling or classification might possibly relate to Hodges' request."  *Id.*  Similarly, in *Moore v. Office of Open Records*, 992 A.2d 907

10

(Pa. Cmwlth. 2010), the Department of Corrections (DOC) provided some records responsive to an inmate's request and attested in both sworn and unsworn affidavits that it was not in possession of additional requested records or that those records did not exist. *Id*. at 908. This Court concluded that the DOC's response was sufficient to meet its burden. *Id*. at 909.

Here, the trial court concluded in its June 2022 order that the Borough's responses to the Brunermers' requests were sufficient and that no further documents or affidavits were warranted. R.R. at 1153a. The Brunermers argue that the trial court erred in this regard, asserting their belief that requested documents remain outstanding and challenging the Borough's attestations that all available records were produced. Brunermers' Br. at 36-52. Specifically, the Brunermers question the Borough's responses and/or attestations with regard to the following: records concerning 723 North Warren Avenue, list of current vacancies, vacancy inspection checklists, change of use documentation for another property in the Borough that changed from a tattoo parlor to light manufacturing, list of individuals who conduct vacancy inspections in the Borough, any report drafted by Kanish in association with his inspection in April 2017, and any documents concerning the Borough's decision to "opt in" and administer its own Uniform Construction Code[5] (UCC) matters via its contract with Kanish's company as opposed to the Pennsylvania Department of Labor and Industry.[6] *Id.* The Borough responds that the trial court correctly determined that its responses and affidavits were sufficient. Borough's Br. at 7.

_____

[5] 34 Pa. Code §§ 401.1-405.42.

[6] Act 45 of 1999 and UCC regulations allow each municipality to decide whether it will "opt in" and administer and enforce the UCC itself (through an employee or contractor certified as a building code official) or "opt out" and defer to the Department of Labor and Industry in UCC matters. *See* https://www.dli.pa.gov/ucc/Pages/Municipal-Election-Information-and-Forms.aspx (last visited October 18, 2023).

11

Substantial record evidence supports the trial court's determination that the Borough provided all documents in its possession or produced sufficient affidavits concerning the rest of the documents sought by the Brunermers. Regarding 723 North Warren Avenue, the Brunermers requested records relating to its vacancy status. R.R. at 685a. In August 2019, the Borough produced a vacancy list for 2019 that included 723 North Warren Avenue, and in January 2020, the Borough produced additional documents concerning that property including a January 2018 letter from the owner confirming that the house on it was habitable but vacant, being readied for sale, and would not be rented; a February 2018 letter from the Borough advising that the property would have to be inspected and registered as vacant; a completed application by the owner for a waiver of vacancy fees; and 2018 and 2019 vacancy inspection reports completed by Troup. *Id*. at 1222a & 1485a-99a. The trial court's declaration in its June 2022 order that the Borough had provided all records requested by the Brunermers would have encompassed the Borough's responses concerning 723 North Warren Avenue, and we conclude that determination was supported by the record.

The Brunermers also challenge the Borough's response to their request for the Borough's current list of vacant properties. R.R. at 689a. In February 2020, the Borough provided a list of vacant properties as of June 26, 2019. *Id*. at 1216a & 122a-23a. The Brunermers now argue that lists with additional information may exist and should have been provided to them, based on Troup's testimony. Brunermers' Br. at 42-43. However, in her deposition, Troup stated only that if an additional vacancy list with enhanced information existed, she was not aware of it. R.R. at 1425a. Moreover, the RTKL request form completed by the Brunermers sought only "[a] current copy of a list of properties currently on the vacant property

list. We are not asking for names or telephone numbers." *Id*. at 137a. The Brunermers' request also did not ask for any additional information regarding vacant properties. The trial court's declaration in its June 2022 order that the Borough had provided all records requested by the Brunermers would have encompassed the Borough's responses concerning its list of properties that were vacant as of the date of the Brunermers' request, and we conclude that determination was supported by the record.

The Brunermers also challenge the Borough's response to their request for "vacancy inspection checklists for 2016-19," asserting that the responses suggested that different versions existed and it was unclear which checklists were used for which inspections. Brunermers' Br. at 15-16 & 43. However, a table produced by the Brunermers' counsel in advance of the February 20, 2020, hearing stated that with regard to that request, the Brunermers provided checklists for 2016-19 and "nothing further is needed." R.R. at 691a. Although the Brunermers argue that the Borough's response was deficient because it did not delineate which forms might have been used in which years, their request was limited to the forms themselves, and they do not claim that the Borough never provided those documents to them. R.R. at 138a & 691a. The trial court's declaration in its June 2022 order that the Borough had provided all records requested by the Brunermers would have encompassed the Borough's responses concerning vacancy checklists as of the date of the Brunermers' request, and we conclude that determination was supported by the record.

The Brunermers next challenge the Borough's response to their request for change of use records concerning another local property where a former tattoo parlor became a site for light manufacturing by Kerr Manufacturing; the Brunermers

13

assert that the Borough has not produced these records nor explained its failure to do so. Brunermers' Br. at 43-44. However, the Borough asserted in its August 2019 response that in 2015, when it believed that change of use was processed, the Borough was an "opt out" community (addressed in note 5 above) and that any change of use documentation would have been generated by the Department of Labor and Industry and therefore was not in the Borough's possession. R.R. at 1216a. The Borough again stated in Shupe's February 2020 and September 2021 affidavits that the Borough possessed no responsive documentation to this request. *Id*. at 1036a & 1507a. As set forth above, a governmental entity's attestation that it does not possess a requested record may satisfy its burden of proof in the RTKL context. *See Hodges*, 29 A.3d at 1192. The trial court's declaration in its June 2022 order that the Borough had established its non-possession of certain documents requested by the Brunermers would have encompassed the Borough's explanation of why it possessed no change of use records for the Kerr Manufacturing transaction, and we conclude that determination was supported by the record.

The Brunermers next assert that the Borough failed to provide a list of officials it uses to perform vacancy inspections, stating that the Borough provided only a "letter, which simply stated who was authorized to perform inspections." Brunermers' Br. at 45-46. That letter, the Borough's August 2019 response, stated: "Brenda Troup, Zoning Officer, performs inspections for the [Borough], as per appointment. The Borough has and will continue to reserve the right to contract for inspection services as needed." R.R. at 1215a. In her deposition, Troup stated that she is the primary vacancy inspector and that in the rare instance where she cannot do an inspection, the Borough and property owner would agree to use someone else, which could be a police officer or someone from Kanish's company. *Id*. at 1428a.

14

She added that the Borough does not keep lists or records of these individuals because "[i]t's not been a necessity to do so." *Id*. As set forth above, a governmental entity's attestation that it does not possess a requested record may satisfy its burden of proof in the RTKL context. *See Hodges*, 29 A.3d at 1192. The trial court's declaration in its June 2022 order that the Borough had established its non-possession of certain documents requested by the Brunermers would have encompassed Troup's explanation of why the Borough did not keep a list of vacancy inspectors, and we conclude that determination was supported by the record.

The Brunermers next assert that the Borough failed to provide the Act 133[7] municipal inspection report (Act 133 report) produced by Kanish in connection with his April 2017 inspection and issuance of a temporary certificate of use and occupancy for the Brunermers' property at 719 North Warren Avenue. Brunermers' Br. at 51. The Brunermers argue that Kanish's testimony that he did not produce a report or documentation other than the temporary certificate itself was insufficient to establish that no such report existed and that the Borough must provide a "verified affidavit" in this regard. *Id*. (citing Kanish's testimony at page 46a of the

---

[7] Section 2.1 of the Municipal Code and Ordinance Compliance Act, Act of December 20, 2000, P.L. 724, *as amended*, added by the Act of November 3, 2016 P.L. 1047, 68 P.S. §§ 1082.1, states that a municipal inspection of a property for purposes of a use and occupancy certificate "shall issue the certificate in the following manner":

> (1) If the municipal inspection reveals no violations.
>
> (2) If the municipal inspection reveals at least one violation, but no substantial violations, the municipality shall issue a temporary use and occupancy certificate.
>
> (3) If the municipal inspection reveals at least one substantial violation, the municipality shall specifically note those items on the inspection report and shall issue a temporary access certificate.

68 P.S. § 1082.1

Reproduced Record). However, the Borough did provide the requisite affidavit; in Shupe's sworn affidavits of February 2020 and September 2021, she attested that the Borough possessed no Act 133 reports with regard to the property. R.R. at 1034a & 1507a. As set forth above, a governmental entity's attestation that it does not possess a requested record may satisfy its burden of proof in the RTKL context. *See Hodges*, 29 A.3d at 1192. The trial court's declaration in its June 2022 order that the Borough had established its non-possession of certain documents requested by the Brunermers would have encompassed the Borough's assertion, consistent with Kanish's testimony, that no Act 133 report was produced in this matter, and we conclude that determination was supported by the record.

Last, the Brunermers challenge the Borough's response to their request concerning the Borough's decision to "opt in" and administer the UCC itself rather than "opting out" and deferring to the Department of Labor and Industry concerning UCC use and occupancy determinations. Brunermers' Br. at 52. The Brunermers argue that the Borough provided some records in November 2019 but subsequently asserted in September 2021 that it had no records concerning the UCC "opt in"; the Brunermers asked the Borough to provide either all records or a verified explanation for why it claimed to have no records. *Id*. The Borough's November 2019 response stated that it was "not in possession of any meeting minutes or letters to the Pennsylvania Department of Labor and Industry" concerning its decision to "opt in," but the Borough did provide a copy of its 2014 form electing to opt in and the corresponding ordinances it enacted to administer the UCC itself. R.R. at 196a-202a. Shupe's September 2021 affidavit reiterated that the Borough possessed no "meeting minutes or letters" concerning its UCC opt-in decision. *Id*. at 1038a-39a. As set forth above, a governmental entity's attestation that it does not possess a

16

requested record may satisfy its burden of proof in the RTKL context. *See Hodges*, 29 A.3d at 1192. The trial court's declaration in its June 2022 order that the Borough had established its non-possession of certain documents requested by the Brunermers would have encompassed the Borough's consistent assertion that it possessed no "meeting minutes or letters" concerning its 2014 decision to opt in, and we conclude that determination was supported by the record.

As the foregoing discussion shows, the trial court's June 2022 order concluding that the Borough's responses to the Brunermers' requests were sufficient, both in terms of what the Borough provided and what it attested it did not possess, was supported by the record and did not amount to legal error or an abuse of discretion. *See infra* note 4 (citing *Capinski v. Upper Pottsgrove Twp.*, 164 A.3d 601, 604 n.4 (Pa. Cmwlth. 2017)). The Brunermers' assertions in this regard are therefore meritless.

## B. RTKL Attorneys' Fees

The purpose of attorneys' fees under the RTKL is to "remedy the damage to the requester where an agency has denied access to records in bad faith[.]" *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1140 (Pa. Cmwlth. 2017) (*Bagwell*). A trial court may order payment of attorneys' fees to a requester pursuant to Section 1304(a) of the RTKL, which provides:

> (a) Reversal of agency determination.—If a court reverses the final determination of the appeals officer[8] or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney[s'] fees

---

[8] In *Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, 243 A.3d 19, 33-34 (Pa. 2020), our Supreme Court held that the "appeals officer" in this section is the records officer of the agency subject to the RTKL request.

and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

65 P.S. § 67.1304(a) (emphasis added). In the context of the RTKL, intent to wrongfully withhold disclosure is not required for a finding of bad faith and an agency's failure to provide an adequate response to a request may be the basis for such a finding. *Uniontown Newspapers v. Pa. Dep't of Corr.*, 185 A.3d 1161, 1170 (Pa. Cmwlth. 2018). However, a trial court's conclusion regarding a party's bad faith for purposes of attorneys' fees under the RTKL will be upheld unless the opponent establishes that the trial court's determination is legally erroneous or unsupported by substantial evidence of record. *Bagwell*, 155 A.3d at 1123 n.3.

The trial court here concluded in its October 2020 decision that the Brunermers "failed to establish that the Borough acted with wanton or willful disregard or bad faith under the RTKL. Accordingly, no attorneys' fees will be awarded to the Brunermers." R.R. at 1008a. In its June 2022 order, the trial court reaffirmed that determination and added that the Borough had not "thereafter committed any bad faith as that term is defined in the [RTKL] or case law interpreting its provisions." *Id.* at 1152a-53a.

The Brunermers argue that the Borough's repeated insufficient responses to the RTKL requests warranted the imposition of attorneys' fees. Brunermers' Br. at 18-30. The Borough replies that the trial court correctly found

18

that the Borough at no point acted in bad faith or willful or wanton disregard of the Brunermers' requests. Borough's Br. at 5-12.

This Court previously considered an appeal by the Brunermers of the trial court's denial of attorneys' fees with regard to different RTKL requests in *Brunermer v. Apollo Borough* (Pa. Cmwlth., No. 661 C.D. 2021, filed July 28, 2022), 2022 WL 2976345 (unreported) (*Brunermer I*). We first summarized the leading cases on bad faith attorneys' fees in RTKL matters, which arose out of a dispute between Uniontown Newspapers, Inc., and the DOC, which initially denied the request on the basis that the records were part of an internal investigation and therefore exempt from disclosure, then repeatedly contested disclosure and defied specific disclosure orders. *Id.*, slip op. at 8-10, 2022 WL 2976345, at **4-5. We noted that in the *Uniontown Newspapers* matter, this Court ultimately found the DOC acted in bad faith and awarded attorneys' fees. *Id.*, slip op. at 10, 2022 WL 2976345, at *5.

In the ensuing *Brunermer I* analysis, this Court concluded:

> The circumstances here are distinguishable from the facts in the *Uniontown Newspapers* cases, where the DOC denied the initial request without conducting a search, then repeatedly failed to locate and disclose documents after orders by both the OOR and this Court to do so. Here, the Borough did not deny the Brunermers' request or claim exemptions to disclosure. The Borough witnesses testified that they did their best to comply with the initial request, then voluntarily and independently searched for more records when they learned better methods to do so or, in the instance of [Borough Solicitor] Andreassi, when he learned from the Brunermers' complaint of additional potential information subject to disclosure. Although a lack of resources does not justify nondisclosure, the Borough did not assert its lack of resources as an excuse, and the trial court found as fact that in the context of the Brunermers' multiple requests and lawsuits, the Borough

19

had essentially done its best. *But see Pa. State Sys. of Higher Educ. v. Ass'n of State Coll. & Univ. Faculties*, 142 A.3d 1023, 1032 (Pa. Cmwlth. 2016) (stating that "just because an agency claims it neither has the time nor resources to conduct a document-by-document review within the time-period required by the RTKL does not make it so"). Unlike in the *Uniontown Newspapers* cases, the record here does not indicate the Borough acted willfully, with wanton disregard of its responsibilities, or otherwise in bad faith. As the record supports the trial court's conclusion, the court did not err in declining to impose attorneys' fees on the Borough.

*Id.*, slip op. at 12-13, 2022 WL 2976345, at *6.

Here, the record includes testimony by Borough officials Shupe and Troup that they did their best to look for anything that pertained to the Brunermers' requests and provided attestations explaining that to the best of their knowledge, other records were either not in the Borough's possession or did not exist. R.R. at 1403a-07a, 1413a-16a & 1422a-28a. The record also includes the Borough's various responses to the requests as discussed above in Section A, where we concluded that the trial court's determination that those responses were sufficient was supported by the record and not in error. *See id.* at 196a-202a, 1034a-39a, 1214a-26a, 1233a, 1428a, 1485a-99a & 1507a.

As in *Brunermer I*, we again conclude that the trial court did not err in declining to impose attorneys' fees on the Borough in either its October 2020 or June 2022 order. Unlike the DOC in the *Uniontown Newspapers* matters, the Borough did not deny or contest the requests, and although the trial court did not explain its denial in detail, its conclusion that the Borough did not act in bad faith or willful/wanton disregard was supported by substantial evidence of record and did

20

not amount to either legal error or an abuse of discretion.[9]  *See infra* note 4 (citing *Capinski*, 164 A.3d at 604 n.4); *see also Bagwell*, 155 A.3d at 1123 n.3.   The Brunermers' assertions in this regard are therefore meritless.

## C.  RTKL Civil Penalties

Section 1305 of the RTKL empowers a court to award penalties as follows:

> (a) Denial of access.--A court may impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith.
>
> (b) Failure to comply with court order.--An agency or public official who does not promptly comply with a court order under this act is subject to a civil penalty of not more than $500 per day until the public records are provided.

65 P.S. § 67.1305.  In *Brunermer I*, we discussed Section 1305 as follows:

> Whereas attorneys' fees pursuant to Section 1304(a) seek to remedy damage to a requester when an agency denies disclosure in bad faith, civil penalties under Section 1305 "penalize conduct of a local agency and . . . provide a deterrent in the form of a monetary penalty in order to prevent acts taken in bad faith in the future." *Bagwell*, 155 A.3d at 1141.   "[B]ad faith is a matter of degree, implicating the extent of noncompliance," and the reviewing court (either the trial court or this Court) has the

---

[9] In *Brunermer I*, we stated:

> We note that Section 1304(a) applies where a reviewing court reverses the agency's denial of disclosure or grants access after a deemed denial, which occurs when an agency fails to timely respond to a request. 65 P.S. § 67.1304(a).  Assuming, without deciding, that the initial requirement for applicability of Section 1304(a) was met, the trial court's finding that the Borough did not act in bad faith is supported by substantial evidence of record.

*Brunermer I*, slip op. at 11, 2022 WL 2976345, at *5.  That approach also applies in this matter.

21

exclusive authority to find facts and impose sanctions in this regard.

In *Bagwell*, the Philadelphia District Attorney's office initially denied the RTKL request as a whole, claiming numerous exemptions. The OOR ordered disclosure and the trial court agreed, ultimately imposing a Section 1305 civil penalty of $500. We affirmed upon concluding that the record was "replete with evidence" that the District Attorney's office wrongly denied access based on the identity of the requester and the presumed intended use of the records, failed to cite sufficient legal authority in support of its reasons for denial, and did not make a good faith search for the requested records. In the *Uniontown Newspapers* cases, this Court found that the DOC's referral of the matter to its health bureau and reliance on the bureau's reasons for denying disclosure did not constitute a good faith search. In imposing Section 1305 penalties on the DOC, we emphasized the agency's "noncompliance throughout the RTKL process" for more than three years.

Where this Court has awarded or upheld penalties under Section 1305(a), there generally has been an initial denial by the agency (as required by the provision) followed by ongoing nondisclosure or explanations not credited by the reviewing court. By contrast, when an agency has shown some diligence to respond to a request and nondisclosure is due to a genuine and nonfrivolous belief that documents have been provided, are unavailable, or are not subject to disclosure, we have declined to impose or uphold penalties.

As discussed above, in the context of the RTKL, intent to wrongfully withhold disclosure is not required to sustain a finding of bad faith, while an agency's failure to provide an adequate response to a request may, but need not, be the basis for such a finding. However, the reviewing court (in this case the trial court) is the finder of fact, and its conclusion regarding a party's bad faith will be upheld unless the opponent establishes that it is legally erroneous or unsupported by substantial evidence of record.

22

*Brunermer I*, slip op. at 14-16, 2022 WL 2976345, at \*\*7-8 (citations omitted); *see also Bagwell*, 155 A.3d at 1123 n.3. (stating that a trial court's conclusion regarding penalties under the RTKL will be upheld unless shown to be legally erroneous or unsupported by substantial evidence of record).

Here, the trial court's October 2020 order declined to impose "bad faith" Section 1305(a) penalties on the Borough and deferred a ruling on the lesser Section 1305(b) "failure to comply" penalties at that time as premature. R.R. at 1009a. In its June 2022 final order, the trial court did not provide any further explanation, but reiterated its finding of no bad faith and generally denied the Brunermers' request to impose penalties after finding that the Borough's responses to all of the requests were "sufficient." *Id*. at 1152a-53a.

The Brunermers argue that the trial court's failure to impose penalties under either part of Section 1305 amounted to reversible error in light of the Borough's failure to respond sufficiently and in a timely manner (the Brunermers point out that the three documents appended to Shupe's September 2021 affidavit were produced 18 months after the trial court's March 2020 consent order), which the Brunermers characterize as both bad faith and noncompliance warranting penalties totaling nearly $1.5 million. Brunermers' Br. at 30-36. The Borough replies that the trial court correctly found that the Borough did not act in bad faith or willful or wanton disregard of the Brunermers' requests, that its responses were sufficient, and that therefore it is not subject to RTKL penalties for either bad faith or noncompliance. Borough's Br. at 5-12.

The record includes testimony by Borough officials Shupe and Troup that they did their best to look for anything that pertained to the Brunermers' requests and provided attestations explaining that to the best of their knowledge, other records

were either not in the Borough's possession or did not exist. R.R. at 1403a-07a, 1413a-16a & 1422a-28a. The record also includes the Borough's various responses to the requests as discussed above in Section A, where we concluded that the trial court's determination that those responses were sufficient was supported by the record and not in error. *See id*. at 196a-202a, 1034a-39a, 1214a-26a, 1233a, 1428a, 1485a-99a & 1507a.

As in *Brunermer I*, we conclude here that the trial court did not err in declining to impose Section 1305 penalties on the Borough in either its October 2020 or June 2022 orders. As discussed above in Section B, the trial court's conclusion that the Borough at no time acted in bad faith was supported by the record. Accordingly, for the same reasons that the trial court did not err in declining to impose attorneys' fees, its refusal to impose Section 1305(a) "bad faith" penalties was also supported by the record and not in error. With regard to the lesser Section 1305(b) "noncompliance" penalties, the trial court found the Borough's responses to the requests, taken as a whole, to be "sufficient" in its June 2022 final order. R.R. at 1153a. As discussed above in Section A, that determination was supported by the record and was not in error. Given that disposition, the record contains insufficient evidence of "noncompliance" to support Section 1305(b) penalties, and the trial court's denial was therefore supported by the record and did not amount to legal error or an abuse of discretion. *See infra* note 4 (citing *Capinski*, 164 A.3d at 604 n.4); *see also Bagwell*, 155 A.3d at 1123 n.3. The Brunermers' assertions in this regard are therefore meritless.

24

## D. Civil Contempt

Section 1304(c) of the RTKL states: "Nothing in this act shall prohibit a court from imposing penalties and costs in accordance with applicable rules of court." 65 P.S. § 67.1304(c). This includes an adjudication of contempt against a party. *Bagwell*, 155 A.3d at 1140 n.20. It is well established that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt." *Joos v. Bd. of Supervisors of Charlestown Twp.*, 237 A.3d 624, 634 (Pa. Cmwlth. 2020). This power includes "broad discretion in fashioning and administering a remedy for civil contempt." *Id*. The purpose of civil contempt is "to compel performance of lawful orders," and the burden is generally on the complaining party to prove noncompliance with the court order. *Id*. However, mere noncompliance with a court order is insufficient to prove civil contempt. *Id*. The complainant must also prove: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Id*. An appellate court will reverse a trial court's order denying a contempt petition "only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason." *Id*.

Here, the trial court denied the Brunermers' motion for civil contempt against the Borough in its October 9, 2020, decision and order, stating that with regard to Section 1304(c), which allows courts to find sanctions outside the RTKL, like civil contempt, the Brunermers "failed to establish grounds under any other Pennsylvania law for the payment of any other penalties or fees by the Borough." R.R. at 1008a. The trial court subsequently referenced the October 2020 decision in its final order of June 29, 2022, and Rule 1925(a) decision. R.R. at 1008a, 1152a-

25

53a & 1211a-12a. The trial court did not specifically explain its contempt decision, but stated in its June 2022 order that it did not find the Borough "to be in willful violation or contempt of any of the several orders entered in January 2020." *Id*. at 1153a.

The Brunermers argue that the Borough did not comply with the trial court's March 2020 consent order directing it to provide documents distinct from those addressed in the January 2020 orders (specifically, the three documents that were not in the Brunermers' original requests but were required to be produced by the trial court's March 2020 consent order), because it did not produce those documents until its final affidavit and response in September 2021. Brunermers' Br. at 11-17. The Borough responds that the trial court correctly declined to impose civil contempt penalties in this matter based on its conclusion that the Borough had not acted in either bad faith or willful disregard of the law. Borough's Br. at 5-12.

Unlike the RTKL's penalty provisions, a finding of civil contempt requires the proponent to show "wrongful intent." *Compare Joos*, 237 A.3d at 634, *with Uniontown Newspapers*, 185 A.3d at 1170. Here, as noted, the record includes testimony by Borough officials Shupe and Troup that they did their best to look for anything that pertained to the Brunermers' requests and provided attestations explaining that to the best of their knowledge, other records were either not in the Borough's possession or did not exist. R.R. at 1403a-07a, 1413a-16a & 1422a-28a. The record also includes the Borough's various responses to the requests as discussed above. *See id*. at 196a-202a, 1034a-39a, 1214a-26a, 1233a, 1428a, 1485a-99a & 1507a. Although the trial court did not explain the specific basis for its denial of the Brunermers' motion for civil contempt in this matter, it generally found no bad faith on the Borough's part; that determination was supported by the totality of

26

the Borough's responses to the request as reflected in the record. We therefore conclude that the trial court did not err or abuse its discretion in denying the petition. *See Joos*, 237 A.3d at 634; *see also infra* note 4 (citing *Capinski*, 164 A.3d at 604 n.4.). The Brunermers' assertions in this regard are therefore meritless.

## IV. Conclusion

In light of the foregoing, the trial court's June 29, 2022, order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

Janet and Scott Brunermer,          :
                 Appellants          :
                               :
          v.          :
                               :   Nos. 746, 747, 748 & 749 C.D. 2022
Apollo Borough          :

## O R D E R

AND NOW, this 19th day of October, 2023, the June 29, 2022, order of the Court of Common Pleas of Armstrong County (trial court) is **AFFIRMED**.

                                 _____

                                 CHRISTINE FIZZANO CANNON, Judge