# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Chester,                         :
                     Appellant      :
                               :   No. 449 C.D. 2025
        v.                          :
                               :   Submitted:  December 8, 2025
Diane Houser                              :

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                            **FILED:  February 9, 2026**

Appellant County of Chester (County) appeals from the order entered by the Court of Common Pleas of Chester County (Common Pleas) on March 6, 2025.  Through that order, Common Pleas denied the County's appeal regarding the Office of Open Records' (OOR) disposition of Appellee Diane Houser's (Houser) Right-to-Know Law (RTKL)[1] request for digital images of absentee and mail-in ballots that had been cast in several recent General Elections.  Upon review, we affirm Common Pleas' order.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

# I. BACKGROUND[2]

On August 5, 2024, Houser submitted four RTKL requests to the County, through which she sought "an electronic copy of the images of all mail-in ballots (including absentee ballots)" that had been cast in the County's General Elections between 2020 and 2023.[3] The County subsequently denied Houser's requests, whereupon she appealed those denials to the OOR. On November 19, 2024, the OOR granted Houser's appeals, relying largely on our recent decision in *Previte v. Erie County Board of Elections*, 320 A.3d 908 (Pa. Cmwlth. 2024),[4] and directed the County to provide Houser with properly redacted copies of the requested ballots over the course of 90 days. The County then appealed the OOR's ruling to Common Pleas, which subsequently denied the appeal on March 6, 2025; in doing so, Common Pleas agreed with the OOR that, per *Previte*, the County was required to provide Houser with the requested ballot images, and instructed the County to do so on a rolling basis within 90 days.[5] The County then appealed Common Pleas' order to our Court.

---

[2] We draw the substance of this section from Common Pleas' memorandum opinion, as well as OOR's November 19, 2024 Final Determination. *See generally* Common Pleas Mem. Op. & Order, 3/6/25; OOR's Final Determination, 11/19/24.

[3] Specifically, Houser requested copies of such ballots for (a) the November 2020 General Election that had been cast between August 1, 2020, and December 31, 2020; (b) the November 2021 General Election that had been cast between August 1, 2021, and December 31, 2021; (c) the November 2022 General Election that had been cast between August 1, 2022, and December 31, 2022; and (d) the November 2023 General Election that had been cast between August 1, 2023, and December 31, 2023.

[4] In *Previte*, we ruled that "images of completed absentee and mail-in ballots are public records that can be obtained through an RTKL request[.]" 320 A.3d at 917.

[5] Common Pleas was the ultimate finder of fact in this matter, as ordained by the RTKL, and consequently conducted a *de novo*, plenary review of the OOR's Final Determination. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

## II. DISCUSSION[6]

The County presents a number of arguments for our consideration, through which it asserts that Common Pleas abused its discretion and committed errors of law by denying its appeal. We condense and summarize these arguments as follows: first, *Previte* does not control the disposition of Houser's requests, because our decision in that matter is currently on appeal before the Supreme Court of Pennsylvania and thus cannot be considered settled law;[7] second, the Pennsylvania Election Code[8] governs the dissemination of county election board records, not the RTKL, and exempts completed absentee and mail-in ballots from disclosure pursuant to an RTKL request; third, Common Pleas neglected to consider or analyze the County's assertion that such disclosure would violate the constitutional right to the secret ballot, as enshrined in article VII, section 4 of the Pennsylvania Constitution;[9] finally, Common Pleas' rolling, 90-day compliance mandate would "essentially incapacitate" the County's Department of Voter Services, due to the sheer volume of ballots that need to be reviewed and the amount of time that it would take to review each one. County's Br. at 16-37. We address each argument *seriatim*.

---

[6] "When[, as here,] the court of common pleas is the 'Chapter 13' or reviewing court, our appellate review is limited to whether the trial court has committed an error of law and whether the findings of fact are supported by substantial evidence." *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1123 n.3 (Pa. Cmwlth. 2017) (citing *Twp. of Worcester v. Off. of Open Recs.*, 129 A.3d 44, 49 n.2 (Pa. Cmwlth. 2016)).

[7] The Pennsylvania Supreme Court has not formally granted *allocatur* in *Previte*, but has instead held that decision in abeyance pending its disposition of the appeal that pertains to our decision in *Honey v. Lycoming Cnty. Offs. of Voter Servs.*, 312 A.3d 942 (Pa. Cmwlth. 2024). *See Previte v. Erie Cnty. Bd. of Elections* (Pa. No. 230 WAL 2024).

[8] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

[9] "All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved." PA. CONST. art. VII, § 4.

First, the County's argument that *Previte* does not constitute controlling law because it is currently on appeal is completely baseless. As we have explained in the past, "[i]t is axiomatic that a decision of an appellate court remains binding precedent, even if it has been appealed, unless and until it is overturned by the Pennsylvania Supreme Court." *Germantown Cab Co. v. Phila. Parking Auth.*, 27 A.3d 280, 283 (Pa. Cmwlth. 2011).[10] As our Supreme Court has yet to reverse *Previte* on appeal, our decision in that matter remains good law.

The County's second argument is similarly without merit. As we explained at length in *Previte*, the question of whether completed absentee and mail-in ballots constitute public records that are disclosable pursuant to the RTKL "hinges upon the interplay between three . . . Election Code provisions: Section 308,[11]

---

[10] Though the appeal in *Previte* did act as an automatic *supersedeas*, *see* Pa. R.A.P. 1736(b), that *supersedeas* "stayed only the enforcement of this Court's order between the parties in that particular litigation" and does not act as a global bar against *Previte* being deemed controlling at this point in other, similar matters. *See Germantown*, 27 A.3d at 293 n.7.

[11] The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, except the contents of ballot boxes and voting machines and records of assisted voters, shall be open to public inspection, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto: Provided, however, That such public inspection thereof shall only be in the presence of a member or authorized employe of the county board, and shall be subject to proper regulation for safekeeping of the records and documents, and subject to the further provisions of this act: And provided further, That general and duplicate returns, tally papers, affidavits of voters and others, and all other papers required to be returned by the election officers to the county board sealed, shall be open to public inspection only after the county board

4

Section 1307-D(a),[12] and Section 1309(a).[13]" 320 A.3d at 915. Based upon a close reading of the latter two statutory provisions, we determined that, in context, the usage therein of the terms "official absentee ballots" and "official mail-in ballots" "refer to *completed* ballots, rather than those that are uncompleted." *Id.* (emphasis in original). Accordingly, we reasoned that completed absentee and mail-in ballots are expressly deemed public records under the Election Code. *Id.* We then recognized that "[t]his reading creates an apparent conflict between Section 308 and Sections 1307-D(a) and 1309(a)[, because Section 308] shields completed ballots and digital copies thereof from RTKL requests once those ballots have been

---

> shall, in the course of the computation and canvassing of the returns, have broken such seals and finished, for the time, their use of said papers in connection with such computation and canvassing.

25 P.S. § 2648.

[12] Added by the Act of October 31, 2019, P.L. 552, 25 P.S. § 3150.17(a). This provision reads as follows:

> All official mail-in ballots, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security.

25 P.S. § 3150.17(a).

[13] Added by the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.9(a). This statute provides as follows:

> All official absentee ballots, files, applications for such ballots and envelopes on which the executed declarations appear, and all information and lists are hereby designated and declared to be public records and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security.

25 P.S. § 3146.9(a).

deposited into a ballot box or recorded through a voting machine." *Id.* (citing *Honey*, 312 A.3d at 950-54). However, we resolved that apparent conflict by ruling that, when read *in pari materia* with Section 308, Section 1307-D(a) and Section 1309(a) "create [specific] exceptions to Section 308's [far more general] ballot protections." *Id.* at 917.

Accordingly, we held "that completed absentee and mail-in ballots are to be treated as public records once those ballots have been removed from the ballot box or voting machine[.]" *Id.* Based upon this holding, we concluded that such ballots are subject to RTKL requests, but must be disclosed in a manner that complies with the Election Code and "[cannot] include any information that identifies (or is reasonably likely to facilitate the identification of) the individuals who cast those ballots." *Id.* In other words, this conclusion was based upon the proposition that the Election Code *itself* expressly mandates that completed absentee and mail-in ballots are public records, as well as that digital images thereof can be obtained via the RTKL process. Given the well-reasoned nature of this conclusion, we have no basis for overturning *Previte* or finding fault with Common Pleas' reliance thereon.[14]

---

[14] We note that the County asserts through its second argument that the Chester County Board of Elections, rather than the OOR, had exclusive jurisdiction "to review a request for records governed by the Election Code." County's Br. at 20. The County bases this contention upon (a) its reading of Section 3101.1 of the RTKL, which states that "[i]f the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act shall not apply," 65 P.S. § 67.3101.1; and (b) *Pennsylvania Public Utility Commission v. Friedman*, in which we explained that the Public Utility Commission (PUC) had sole jurisdiction to both determine whether utility-related records contained confidential security information (CSI), and were thus shielded from disclosure, and to hear challenges to such determinations. 293 A.3d 803, 819-20 (Pa. Cmwlth. 2023). The County's position on this point is entirely unsupported. As we have already explained, there is no conflict in this instance between the Election Code and the RTKL, as, again, the Election Code expressly declares that absentee and mail-in ballots are

Similarly, the County's third argument, regarding article VII, section 4 of the Pennsylvania Constitution, does not warrant reversal of Common Pleas' order. The County asserts through this argument that "it is highly probable secrecy in voting would be destroyed" if it went ahead and provided Houser with the requested ballot images. County's Br. at 30. According to the County, there are a number of voting precincts in the County that have a small number of registered voters and an even smaller number of absentee or mail-in ballot requests in each election; given this, the County maintains that there is a great risk that an individual will be able to figure out the identity of the voters who cast those ballots through the votes cast thereby, or even simply by recognizing the handwriting style used thereon. *Id.* at 30-31.

The County's argument is well taken. As we made clear in *Previte*, "[absentee and mail-in] ballots can be obtained through an RTKL request as long as [disclosure] follow[s] the Election Code's rules . . . and [the ballots] do not include any information that identifies (or is reasonably likely to facilitate the identification of) the individuals who cast those ballots." 320 A.3d at 917. Thus, *Previte* contemplates discrete instances where specific ballots may not be disclosable because they contain information about voters' identities that simply cannot be anonymized. *Id.* In such a scenario, the proper step would be for the recipient of the RTKL request to ask the finder-of-fact to deem those ballots as exempt from disclosure.

---

public records. 25 P.S. §§ 3146.9(a), 3150.17(a). Furthermore, the County's attempt to seize jurisdiction wholly misinterprets *Friedman*, which hinged upon the fact the PUC had been *expressly vested by statute* with exclusive authority to handle utility-related CSI issues (including requests for disclosure of CSI-designated records). *See Friedman*, 293 A.3d at 817-20. *Friedman* is thus inapposite, because the Election Code does not imbue county election boards with similar authority over election-related records.

However, that is not the approach that the County took here. Instead of seeking to have Common Pleas exempt discrete tranches of ballots from disclosure, the County pursued a blanket denial of Houser's entire request. *See* County's Br. in Support of Petition for Review/Appeal of Final Determination of the OOR at 16-20. Furthermore, the County rested its constitutional ballot secrecy argument solely upon hypothetical concerns, rather than the actual record of how votes were cast in those smaller precincts. *See id.* Accordingly, Common Pleas' failure to directly address this argument constituted harmless error at most.

Finally, the County has waived its argument that Common Pleas erred by directing the County to produce the requested ballot images on a rolling basis over the course of 90 days. Per Pennsylvania Rule of Appellate Procedure 2119(a), an appellate brief must contain "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him." *Wirth v. Com.*, 95 A.3d 822, 837 (Pa. 2014) (quoting *Com. v. Johnson*, 985 A.2d 915, 924 (Pa. 2009)) (cleaned up). Though the County provides a relatively thorough explanation regarding why it believes that Common Pleas' disclosure schedule is unreasonable, it does not provide *any* legal analysis or authority in that portion of its brief. Simply put, the County has based this argument solely upon its opinion about the schedule, *not* upon any legal precept that ties the allowable timeframe for satisfying an RTKL request to whether the request is burdensome or voluminous. *See* County's Br. at 35-37. Therefore, the County cannot contest

8

Common Pleas' disclosure schedule, because it has waived that argument on account of its deficient brief.

## III. CONCLUSION

In accordance with the foregoing analysis, we affirm Common Pleas' March 6, 2025 order.

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Chester,            :
                  Appellant       :
                                :    No. 449 C.D. 2025
             v.               :
                                 :
Diane Houser             :

## O R D E R

AND NOW, this 9th day of February, 2026, it is hereby ORDERED that the order entered by the Court of Common Pleas of Chester County on March 6, 2025, is AFFIRMED.

 

**LORI A. DUMAS, Judge**